[No. A038115. First Dist., Div. Three. Oct. 26, 1988.]

Estate of LEON J. LIBEU, Deceased.
HELEN L. LIBEU, as Executrix, etc., Petitioner and Appellant, v.
JACK LIBEU, Objector and Appellant.

COUNSEL

James A. Rundel and Steven C. Neustadter for Petitioner and Appellant.

Paula Leibovitz and Dooley & Leibovitz for Objector and Appellant.

OPINION

STRANKMAN, J.—Petitioner and appellant Helen L. Libeu (petitioner), the surviving spouse of the decedent Leon Joseph Libeu and the executrix of his will, appeals from an order instructing her pursuant to her petition for instructions concerning (1) payment of the recapture tax under Internal Revenue Code section 2032A(c),[1] and (2) a marital deduction bequest. Objector and appellant Jack Libeu (objector), who objected to the petition for instructions, also appeals from the order of instructions.

I

*Background Facts*

The decedent died June 19, 1982, in Sonoma County, California. Decedent was survived by petitioner, four adult children from a previous marriage, including objector, and one adult child from his marriage to petitioner. Decedent's will, dated July 1, 1965, with codicils dated April 12, 1976, and May 15, 1978, was admitted to probate on August 17, 1982.

The fourth paragraph of the will (par. 4) provides for a fractional share marital deduction bequest to petitioner, discussed in more detail, *post*. The fifth paragraph of the will provides that the remainder of the estate is to be held in trust with petitioner as the sole income beneficiary of the trust during her lifetime. Upon her death, the remainder of the trust assets shall be distributed to decedent's four children from his previous marriage.

A substantial portion of decedent's estate consists of woodlands situated in Mendocino County. Decedent's estate elected on decedent's federal estate tax return to value the woodlands under the special use valuation provisions of section 2032A. As discussed in more detail below, special use valuation allows for valuation of property on the basis of its value for a "qualified," i.e., current use, rather than its fair market value. (26 C.F.R. § 20.2032A-

---

[1] All further statutory references are to the Internal Revenue Code unless otherwise indicated.

3(a).) The special use value of the woodlands, and the value used for federal estate tax purposes, was $138,450. The value of the woodlands listed on the inventory and appraisement of estate assets was $482,795.[2]

As a result of the special use valuation election, decedent's total gross estate for federal tax purposes was valued at $474,809. The inventory value of the gross estate as of the date of decedent's death was listed at $819,154.

Petitioner, as executrix, filed a petition for instructions (Prob. Code, § 588) requesting instructions from the probate court concerning two matters, both related to the special use valuation election. The first matter concerned the funding and amount of the fractional share marital deduction bequest contained in paragraph 4 of the will. The second matter concerned liability for payment of the recapture tax under section 2032A upon disposition of the woodlands.

Objector objected to petitioner's proposed instructions. Following a hearing on the petition, the court issued instructions on both matters. Petitioner challenges the instructions pertaining to liability for the recapture tax under section 2032A. Objector challenges the instructions pertaining to the calculation of the amount of the fractional share marital deduction bequest.

## II

### Recapture Tax Under Section 2032A

A. *Governing Sections and Treasury Regulations.*

The "taxable estate" of a decedent is determined by deducting from the "gross estate" certain allowable deductions. (§ 2051.) Property is usually valued for gross estate purposes at its fair market value determined on the basis of "highest and best" use. (26 C.F.R. § 20.2032A-3(a).)

In the alternative, an executor may make a special election under section 2032A for the valuation of "qualified real property." "Qualified real property" includes property used for farming and "qualified woodland." (§ 2032A(b), (e)(3)-(5) and (13).) If an election is made, such property is valued for estate tax purposes on the basis of its value for its "qualified use," i.e., current use, in farming or as woodlands, rather than its fair market value determined on the basis of its "highest and best" use. (26 C.F.R., § 20.2032A-3 (a).) The election of section 2032A generally results in

---

[2] The inventory and appraisement of assets set forth the fair market value of each asset as of the date of decedent's death. (Prob. Code, § 600.)

property being valued at a lesser amount, resulting in less estate tax. For this reason, decedent's estate elected the special use valuation for the estate's woodlands.

Tax benefits realized by the estate as a result of the election of special use valuation may be fully or partially recaptured if timber on the "qualified woodland" is severed or disposed of during the recapture period. The recapture period is 10 years from the date of decedent's death or before the death of the "qualified heir," whichever occurs first. (§ 2032A(c)(1).) The amount of tax benefit potentially subject to recapture is the excess of the estate tax liability that would have been incurred had the special use valuation not been elected over the actual estate tax liability based on the special use valuation. (See § 2032A(c)(2)(E).)

**B.** *Issue: Who is liable for payment of the recapture tax—the income beneficiary of the trust or the remaindermen?*

The probate court instructed as follows concerning the payment of recapture tax: "Any federal 'recapture tax' imposed pursuant to the provisions of IRC § 2032A(c)(2)(E) on the specially valued real property in decedent's estate . . . during the continuance of the administration of this estate and during the continuance of the testamentary trust . . . *shall be charged to the income of said trust, and not against the principal of said trust*." (Italics added.) Accordingly, petitioner, the sole income beneficiary of the trust, was held liable for payment of the recapture tax.

Petitioner contends that the California Probate Code and Civil Code require that the recapture tax be charged against the principal, not the income, of the trust. Objector contends that the instructions should be affirmed or, in the alternative, modified to provide that both petitioner and the remaindermen under the trust, including objector, are personally liable for the recapture tax. We agree with objector that the instructions should be so modified.

**C.** *Discussion.*

The Internal Revenue Code expressly states who must pay the recapture tax. Section 2032A(c)(5) states that the "qualified heir shall be personally liable" for the recapture tax. A "qualified heir" is defined as a "member of the decedent's family who acquired such property (or to whom such property passed) from the decedent." (§ 2032A(e)(1).) A "member of the family" means "(A) an ancestor of such individual, [¶] (B) the spouse of such individual, [¶] (C) a lineal descendant of such individual, of such individu-

al's spouse, or of a parent of such individual, or [¶] (D) the spouse of any lineal descendant described in subparagraph (C)." (§ 2032A(e)(2).)

Petitioner is the "spouse" of the decedent. Objector, along with the other remaindermen of the trust, are "lineal descendants" of the decedent. All, therefore, are "members of decedent's family" who have acquired an interest in the property from decedent. All, therefore, are "qualified heirs" personally liable for the recapture tax.

That the woodlands were not passed directly to petitioner and decedent's children, but were transferred to a trust, does not affect the qualified heirs' liability for payment of the recapture tax. ■ A decedent can devise a farm or "qualified woodlands" to a trust without losing eligibility for section 2032A special use valuation as long as all beneficiaries of the trust are "qualified heirs." (See, e.g., Private Letter Ruling No. 8416002; National Office Technical Advice Memorandum No. 8209004.) The "qualified heirs," however, and not the trust, remain personally liable for the recapture tax. (*Ibid.*)

■ Prior to filing her petition for instructions, petitioner acknowledged personal liability for the recapture tax under section 2032A by filing a written agreement to that effect required by section 2032A(d)(2). That subsection requires that a written agreement be signed by each person who has an interest in property subject to special use valuation whereby he or she consents to liability for the recapture tax.[3] Petitioner signed an agreement, which was attached to the federal estate tax return, as "the qualified heir" in which she stated she would "expressly agree and consent to personal liability under subsection (c) of § 2032A for the additional tax imposed by that subsection . . . in the event of certain early dispositions of the property or early cessation of the qualified use of the property." The decedent's four surviving children also signed the agreement as the remaindermen.

As objector points out, the remaindermen as well as petitioner should have been designated the "qualifying heirs" consenting to personal liability for the recapture tax, and the agreement's designation of petitioner alone as the "qualifying heir" constitutes error. (See Private Letter Ruling No. 8416002.) However, such error does not necessarily void the election of special use valuation, but can be corrected upon notification of such error by the Internal Revenue Service provided that the agreement is in "substan-

---

[3] 26 Code of Federal Regulations section 20.2032A-8(c)(1) provides that with respect to a qualified heir, the written agreement must "express consent to personal liability under Section 2032A(c) in the event of certain early dispositions of the property or early cessation of the qualified use. . . ."

tial compliance" with section 2032A. (§ 2032A(d)(3).) Objector indicates that he as well as the other remaindermen seek to correct the error and consent to personal liability for the recapture tax.

■ Petitioner's written consent to personal liability for the recapture tax is directly inconsistent with her contention on appeal that the recapture tax should be charged against the trust principal under California law. Petitioner relies upon the provisions of former Civil Code section 730.13, subdivision (c),[4] and former Probate Code section 973[5] (in effect at the time of the date of the hearing on the petition for instructions) which provided generally that an estate tax imposed on a trust shall be charged against and paid out of the trust principal.

Under the doctrine of federal preemption, however, these sections do not apply to the recapture tax under section 2032A because such application would directly conflict with overriding federal law. It is fundamental that state law is preempted when it actually conflicts with federal law. (*Pacific Gas & Elec.* v. *Energy Resources Comm'n* (1983) 461 U.S. 190, 204 [75 L.Ed.2d 752, 765, 103 S.Ct. 1713].) The preemption doctrine applies to federal law governing the apportionment of the federal estate tax. (See *In re Estate of Green* (1962) 76 N.J. Super. 559 [185 A.2d 57, 61].) In *In re Estate of Green,* the court held that where section 2207 provided that if part of decedent's gross estate consisted of the value of property included because the decedent had a power of appointment over it, then the recipients of this property were liable for their share of the estate tax. In concluding that section 2207 prevailed over its state apportionment statute, the New Jersey court stated: ". . . [I]t seems reasonable to conclude that the federal provision prevails over state law. Since the Congress has power to impose the tax, it must have primary power to designate the portions of the estate by which the tax is to be borne and in what proportions." (*Id.,* at p. 61.)

---

[4] Former Civil Code section 730.13, subdivision (c) (repealed by Stats. 1986, ch. 820, § 2, operative July 1, 1987), provided: ". . . The following charges shall be made against principal: . . . (5) If an estate or inheritance tax is levied in respect of a trust in which both an income beneficiary and a remainderman have an interest, any amount apportioned to the trust, including penalties, even though the income beneficiary also has rights in the principal."
This section was superseded by Probate Code section 16312, subdivision (d)(5). (Stats. 1986, ch. 820, § 40, eff. July 1, 1987.)

[5] Former Probate Code section 973 provided: "In cases where a trust is created, or other provision made whereby any person is given an interest in income, or an estate for years, or for life, or other temporary interest in any property or fund, the federal and California estate taxes on both such temporary interest and on the remainder thereafter shall be charged against and be paid out of the corpus of such property or fund without apportionment between remainders and temporary estates."
This section was amended and restated as California Probate Code section 20113 (Stats. 1986, ch. 783, § 25, eff. Jan. 1, 1987).

We conclude that the provisions of section 2032A, not California law, govern the allocation of the recapture tax in this case.

The remaining issue is the manner of allocation of responsibility for payment of the recapture tax among petitioner as well as objector and the other remaindermen, who are all "qualified heirs" personally liable for the recapture tax. The Congressional Committee Reports under section 2032A directly address this issue: ". . . where more than one qualified heir receives qualified real property with respect to which special use valuation has been elected or receives an interest in such property, the adjusted tax difference is to be allocated among the property interests in proportion to their respective reductions in value." (H.R.Rep. No. 94-1380, 1976 C.B. vol.3, p. 760.)

The tables used for computing the present value of life estates and remainders under 26 Code of Federal Regulations, sections 20.2031-7 and 25.2512-5(f) (Tables A, B) can be used to determine the value of each qualified heir's interest in the case at bar. Internal Revenue Service Private Rulings also provide examples of formulas for determining the allocation of the recapture tax among the qualified heirs. For example, in Private Letter ruling No. 8434085, a decedent devised an undivided one-half interest in her farm property to A for life and the remainder of that interest to A's children, per stirpes. B and C each received an undivided one-fourth interest for life in the property. The remainder of B and C's interests were to pass to D. A, A's children, B, C, and D are all "qualified heirs." They planned on disposing of this property to a nonqualified heir. This disposition would trigger a recapture tax under section 2032A(c). The issue was the allocation of the recapture tax among such heirs. The Internal Revenue Service concluded the recapture tax attributable to an heir's interest can be expressed by use of a formula set forth below in the margin.[6]

■■■ We conclude that the probate court's finding that petitioner alone is liable for the recapture tax is erroneous, and that petitioner and all

---

[6]

Fair market value at date of decedent's death of the heir's interest less the 2032A value of such interest.

Fair market value at date of decedent's death of all qualified property less the 2032A value of such property.

$\times$ Estate tax calculated with fair market values less allowable credits minus the estate tax calculated using 2032A value less allowable credits.

$=$ Adjusted Tax Difference attributable to the heir's interest.

remaindermen under the trust are personally liable as qualified heirs for the recapture tax. We therefore remand the matter to the probate court for the determination of the allocation of the recapture tax among the qualified heirs.

## III

### *Marital Deduction Bequest*

A. *Introduction.*

Paragraph 4 provides for a bequest to petitioner in an amount calculated pursuant to a formula based upon the maximum marital deduction allowed under section 2056 for estate tax purposes. Paragraph 4 provides in part: "I give to my wife, HELEN L. Libeu, should she survive me by four months, a fractional share of my estate, including the property described in paragraph SECOND above, which shall be equivalent to the maximum marital deduction obtainable in fixing the Federal Estate Tax upon all of the items included in my gross estate for Federal Estate Tax purposes (whether or not passing under this Will or included in my estate for purposes of actual probate). There shall be subtracted from such fractional share any property passing to my wife outside of probate which qualifies for the marital deduction. *The valuation placed upon the property in the estate in finally settling my estate tax liabilities shall determine such fractional share.* [¶] The foregoing bequest shall be paid only in assets which qualify for the marital deduction, and no State Inheritance Tax or Federal Estate Taxes shall be paid from or charged against property passing by virtue of this bequest. . . ." (Italics added.)

As explained below, the probate court's instructions applying the marital deduction formula are erroneous.

■ B. *Background legislation governing formula marital deduction bequests.*

Section 2056 provides for a "marital deduction" for federal estate tax purposes consisting of a deduction from a decedent's gross estate of the value of property interests passing from the decedent to his surviving spouse. Under current law, the marital deduction is unlimited. Prior to the Economic Recovery Tax Act of 1981 (ERTA, Pub.L. No. 97-34, eff. Aug. 13, 1981), the maximum marital deduction allowed, regardless of the amount of property passing to the surviving spouse, was the greater of $250,000 or one-half of the "adjusted gross estate." (§ 2056(c)(1) (prior to amendment by Pub.L. No. 97-34, § 403).)

Following the enactment of ERTA, Congress, in recognition that decedents under wills executed prior to ERTA probably did not intend to pass to a surviving spouse any amount greater than the greater of $250,000 or one-half of the adjusted gross estate, adopted a transitional rule which provides generally that section 2056 as it existed prior to ERTA applies to pre-ERTA wills. (Pub.L. No. 97-34, § 403(e).) Under this transitional rule, the current Internal Revenue Code provisions for unlimited marital deductions do not apply to wills executed and not amended before September 12, 1981. The transitional rule also provides, however, that each state has the right to enact a rule making section 2056 as amended by ERTA applicable to wills executed prior to ERTA. (Pub.L. No. 97-34, § 403(e)(3)(D).)

In response to the choice given to it by Congress, the California Legislature enacted former Probate Code section 1034 (Stats. 1982, ch. 41, § 3, pp. 92-93, now Prob. Code, § 21523) which adopted in essential part the federal transitional rule.[7]

Decedent's will was executed on July 1, 1965, and had not been amended by codicil since 1978. Accordingly, under former Probate Code section 1034, pre-ERTA section 2056 governs the determination of the amount of the marital deduction bequest under paragraph 4 of the will.

■ C. *Calculation of marital deduction bequest for estate tax purposes.*

A marital deduction equal to $254,973, representing one-half of the amount of the adjusted gross estate (and the maximum marital deduction allowed under former section 2056), was taken on decedent's federal estate tax return. This deduction was calculated as follows: (1) $143,795 of joint tenancy property passing to petitioner; (2) $6,570 of life insurance proceeds; (3) $2,500 of personal property passing to petitioner; (4) $87,848 qualified terminable interest property election (§ 2056 (b)(7)); and (5) $14,577 marital deduction bequest pursuant to paragraph 4 of decedent's will. The

---

[7] Former Probate Code section 1034 provided: "If a will dated on or before September 13, 1981, indicates the testator's intention to make a gift that will provide the testator's estate with the maximum marital deduction, then the will passes to the recipient an amount equal to the maximum marital deduction which would have been allowed as of the date of the testator's death for federal estate tax purposes under federal law as it existed before August 13, 1981, (before the applicability of the Economic Recovery Tax Act of 1981) adjusted under all of the following, if applicable: [¶] (a) The provisions of Section 2056(c)(1)(B) and (C) of the Internal Revenue Code as were in effect immediately before the Economic Recovery Tax Act of 1981, if required; [¶] (b) So that the testator's gross estate does not include any property by reason of Section 2602(c)(5)(A) of the Internal Revenue Code; and [¶] (c) To reduce the amount passing under the gift by the final federal estate tax values of any other asset (1) passing from the testator to the testator's surviving spouse under the testator's will or outside of the will and (2) which qualifies for the marital deduction."

amount of the marital deduction bequest was calculated (as required by paragraph 4) by subtracting from the maximum possible marital deduction ($254,973) the amount of all other assets passing to the surviving spouse, including nonprobate assets ($240,893). The remaining amount is $14,577.[8]

Both the amount of decedent's gross estate and the marital deduction for purposes of the estate tax return were calculated using the special use value and not the inventory value for the woodlands eligible for special use valuation under section 2032A.

D. *"Fractional share" marital deduction bequest.*

A formula marital deduction clause in a will can provide for either a pecuniary bequest or a fractional bequest. A pecuniary bequest is a bequest of a specified set dollar amount, stated in dollars or determined by formula, and payable in that amount regardless of the fluctuation in value of the decedent's property between the date of death and the date of payment. A fractional bequest is a bequest of each item in the estate against which the described fraction is to be applied. Because a fractional share is not a set dollar amount, but a bequest of a fraction of each asset, it has the advantage of automatically participating in gains, and the disadvantage of participating in losses, from the date of death to the date of distribution. (Cal. Will Drafting Practice (Cont.Ed.Bar 1982) § 6.34, pp. 253-255.)

Paragraph 4, quoted, *ante,* provides for a fractional share marital deduction bequest, i.e., a bequest in an amount equal to a fraction of the estate. Such bequest is in accordance with decedent's intent, set forth in paragraph 4, that the executrix "distribute property which has appreciated in value or depreciated in value since my death in such a manner that the benefits arising to and the detriment suffered by my estate with respect to such changes in value, shall be equally apportioned by value among my beneficiaries not receiving cash bequests."

E. *Calculation of amount and funding of marital deduction bequest.*

In her petition for instructions, petitioner proposed that for distribution purposes, the amount of the marital deduction bequest be determined based upon the inventory value, and not the special use value of the woodlands, which would entitle her to a marital deduction bequest in the amount of $79,371, rather than $14,577, to be satisfied by assets based upon their fair market value.

---

[8] The actual amount remaining and the amount claimed on the federal estate tax return is $14,080. However, petitioner now claims $14,577 is the marital deduction amount, and objector stipulates to this amount.

Objector objected to this proposal on the ground, among others, that paragraph 4 specifically provides for the calculation of the marital deduction bequest using valuations stated in the estate tax return, which included special use valuation of the woodlands.

The probate court, however, accepted petitioner's proposal and instructed: ". . . The estate tax marital deduction bequest provided for in Paragraph Fourth of decedent's will shall be computed based upon the Inventory and Appraisement value of the decedent's assets and shall not be computed based on the federal estate tax special use valuation of decedent's assets. Accordingly, the amount of such bequest is determined to be Seventy-nine Thousand Three Hundred Seventy-one Dollars ($79,371.00), to be satisfied on a prorata basis."[9]

Such instructions are contrary to the provisions of paragraph 4. Under paragraph 4, the values to be used in the fraction to be applied to determine the "fractional share" of the estate are the values used "in finally settling my estate tax liabilities," i.e., the values used on decedent's estate tax return, which included special use valuation of some of the property.

▮ Petitioner contends that decedent could not have intended the calculation of the bequest using special use values because at the time he executed the will, the woodlands were not eligible for special use valuation. Only since the enactment of ERTA did the woodlands become eligible for special use valuation. Petitioner argues that former Probate Code section 1034 requires that the amount passing under a maximum marital deduction formula bequest be computed without regard to the provisions of ERTA.

Petitioner's construction of ERTA and former Probate Code section 1034, which essentially adopts the federal transitional rule, is erroneous. Under the federal transitional rule, only former section 2056 (the marital deduction provision) applies to wills executed before the enactment of

---

[9] Petitioner explains in her reply brief that the probate court's order provided for the calculation of a fractional share of decedent's estate, as follows:

$\dfrac{\$79,371}{\$819,154}$ (paragraph 4 marital deduction using inventory values) / (inventory value of decedent's estate) = .09689% fractional share of estate to be distributed to petitioner

ERTA, not the entire federal estate tax law. The transitional rule states in part that if the decedent dies after December 31, 1981, and the will was executed before September 13, 1981, then "the amendment made by subsection (a) shall not apply to the estate of such decedent." (ERTA, § 403(e)(3).) The language "the amendment made by subsection (a)" refers to the amendment that amended section 2056 to provide for the current unlimited marital deduction. The special use valuation rules that were amended by ERTA (ERTA, § 421(h)) were not amended by "subsection (a)" of section 403 of ERTA. Thus, the pre-ERTA special valuation rules do not apply to decedent's will.

■ A marital deduction pursuant to paragraph 4 in the amount of $14,577 was taken on decedent's federal estate tax return. Decedent's adjusted gross estate on the estate tax return was $474,809. Using these figures, the fraction to be applied to determine "the fractional share" of decedent's estate under paragraph 4 is:

$$\frac{\$14,577 \text{ marital deduction}}{\$474,809 \text{ gross estate}} = 3.07 \text{ percent}$$

Accordingly, the paragraph 4 marital deduction bequest for distribution purposes is 3.07 percent of decedent's gross estate. Only the *fraction* itself is determined using special use values, not the amount of the bequest. Such amount ultimately is a "fractional" portion of all of decedent's property, whether valued at its inventory value or fair market value at the time of distribution.

Thus, the fraction of 3.07 percent is applied to the total gross estate, whether valued at its inventory value ($819,154) or fair market value at the time of distribution, to determine the amount to which petitioner is entitled pursuant to the marital deduction bequest.

Such application of paragraph 4 is consistent with BNA Tax Management Portfolio No. 445 (1988) ("Section 2032A—Special Use Valuation") which provides the following example of the application of a fractional share marital deduction clause to an estate if section 2032A is elected: An estate consists of 800 acres of farmland valued at $2,000 per acre (fair market value) on the date of death ($1.6 million total value) and $200,000 of operating farm assets. The use value of the 800 acres is $1,000 per acre ($800,000 total use value). Assume will is drafted to fund a credit trust first

(up to $600,000) and is followed by an unlimited marital deduction bequest. If decedent died in 1987, his gross estate is $1 million computed as follows:

| | |
|---|---:|
| Farmland at Use Value | $800,000 |
| Operating Assets | 200,000 |
| Taxable Gross Estate | $1,000,000 |

If the gross estate used fair market value, it would have been computed as follows:

| | |
|---|---:|
| Farmland at FMV | $1,600,000 |
| Operating Assets | 200,000 |
| Gross Estate (FMV) | $1,800,000 |

For estate tax purposes, the $1 million gross estate (special use value) is made up of a $400,000 marital deduction amount and a $600,000 credit trust.

If the marital deduction bequest is a fractional share marital deduction bequest, then the marital share is equal to 40 percent ($400,000/$1,000,000 = 40%). For distribution purposes, the marital share receives estate assets equal to 40 percent of fair market value of the estate ($720,000). The fair market value passing to the credit trust is $1,080,000 ($1,800,000 − $720,000). (See BNA Tax Management Portfolio No. 445, *supra,* Detailed Analysis, at p. 165.)

Funding the marital deduction bequest under paragraph 4 with 3.07 percent of the estate, whether that estate is valued at its inventory value or fair market value at time of distribution, assures that petitioner and the remaindermen both share in the allocation of specially valued and nonspecially valued properties, which result is in accordance with decedent's intent that the benefits and detriments resulting from a change in values during his lifetime be equally apportioned among the beneficiaries.

## IV

### Disposition

The matter is remanded to the probate court with directions to modify its instructions (1) to provide that all qualified heirs under the trust are liable for the federal recapture tax under section 2032A, in proportion to their

respective interests; and (2) to determine the amount of the paragraph 4 marital deduction bequest in accordance with this opinion.

Barry-Deal, Acting P. J., and Merrill, J., concurred.

Petitioner and appellant's application for review by the Supreme Court was denied January 26, 1989.