ESTATE OF GEORGIA LEE MERWIN, DECEASED, DARRELL MERWIN, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 23398-88.     Filed August 21, 1990.

*Jan A. Rosati* and *Robert R. Rubin,* for the petitioner.
*Neal O. Abreu* and *Shelleyanne W.L. Chang,* for the respondent.

### OPINION

NIMS, *Chief Judge:* Respondent determined a deficiency of $111,228 in petitioner's Federal estate tax. The issue for decision is whether petitioner is entitled to value real property at its special use value pursuant to section 2032A. (Unless otherwise indicated, section references are to the Internal Revenue Code as amended and in effect at the date of decedent's death. Rule references are to the Tax Court Rules of Practice and Procedure.)

The parties submitted this case fully stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

*Background*

Georgia Lee Merwin (decedent) died testate on October 18, 1984. Darrell Merwin, decedent's husband and the executor of her estate, resided in Clarksburg, California, at the time the petition was filed in this case.

Petitioner timely filed a Federal estate tax return on July 16, 1985, with the Internal Revenue Service (IRS) District Director at Sacramento, California. The filed return was the March 1985 version of Form 706. On page 2 of petitioner's Form 706, in answer to the question, "Do you elect special use valuation?", petitioner marked the "yes" box. Immediately below the question about special use valuation, Form 706 (March 1985) reads: "If 'yes,' complete and attach Schedule N and the agreements required by the instructions to Schedule N." This statement is part of the Form 706 "directions," as we use the term herein, meaning preprinted guidance and commands on the face of Form 706. By "instructions," in contrast, we mean the supplementary guidance to Form 706 entitled "Instructions for Form 706."

Schedule N of Form 706 (March 1985), entitled "Section 2032A Valuation," directs the taxpayer to "Enter the requested information for each party who received any interest in the specially valued property. Also complete and attach the required agreements described in the instructions." Petitioner's Schedule N lists Darrell Merwin, surviving spouse, and Gary Merwin, son, as such parties. For Darrell Merwin, under the preprinted headings "Identifying number," "Fair market value," and "Special use value," only "Fair market value" has an entry, which reads "Life estate." For Gary Merwin, the listed "Identifying number" is "Sch. A. Items 1-9," the "Fair market value" is blank, and the "Special use value" is "152,583."

Listed on Schedule A of petitioner's Form 706 are nine parcels of real property, each with a date-of-death value, according to petitioner's entries, "based on Special Use Valuation, copy of which is attached." The first parcel is described as containing the residence of decedent and Darrell Merwin, and has a listed value of $27,500. (Any numerical real property value discussed herein, either fair market value or special use value, represents decedent's community property one-half interest.) The remaining eight

parcels, each with its own listed value, have a summed listed value of $152,583. Immediately following Schedule A is a three-page "Annexation A," which properly computes the special use values of the parcels for farming purposes, based on net share rentals under section 2032A(e)(7). These computed special use values in Annexation A coincide, except for insignificant rounding differences, with the nine listed values on Schedule A.

As filed with the IRS, petitioner's completed estate tax return, including attachments, makes no reference to the fair market value of the nine parcels, either individually or in the aggregate.

Petitioner did not attach a notice of election to its filed estate tax return, as that notice is described in section 20.2032A-8(a)(3), Estate Tax Regs., and the instructions to Schedule N. Petitioner also did not attach an "agreement to special valuation by persons with an interest in property" (hereinafter referred to as a recapture agreement), as described in section 2032A(a)(1)(B) and (d)(2), section 20.2032A-8(c), Estate Tax Regs., and the instructions to Schedule N.

IRS attorney David Alfredson (Alfredson) sent a letter to Darrell Merwin, dated February 3, 1987, stating that he had been assigned to audit the estate tax return. The letter also stated: "I wish to inform you at this time that the estate does not qualify for special use valuation under Section 2032A." At an initial meeting with Alfredson on July 9, 1987, petitioner's representative asked why petitioner did not qualify for special use valuation. Alfredson replied that a recapture agreement was not attached to the return. Alfredson did not request any other information relating to special use valuation and petitioner did not provide him with any.

By transmittal letter dated September 25, 1987, petitioner's representative sent an "Agreement to Special Use Valuation under Section 2032A," which was a purported recapture agreement dated August 25, 1987, to the Internal Revenue Service Center at Ogden, Utah. At a meeting on September 29, 1987, petitioner's representative informed Alfredson that this agreement had been sent 4 days previously. At an appeals conference on February 16, 1989,

petitioner's representative supplied a copy of the agreement and its transmittal letter to an IRS appeals officer who had so requested.

During the course of his examination of the estate tax return, Alfredson reviewed an "Inventory and Appraisement" contained in decedent's probate case file at the Yolo County (California) Courthouse. On the cover page of this document, a probate referee had signed a declaration, dated September 16, 1985, stating that he had appraised "each item set forth in attachment 2." Attachment 2 lists, among other things, the nine parcels of real property appearing on Schedule A of petitioner's Form 706. The total of their appraised values in attachment 2 is $536,817, which the parties now stipulate was the fair market value of decedent's interest in the nine parcels at her death. At the appeals conference on February 16, 1989, petitioner's representative provided the IRS appeals officer with a copy of the inventory and appraisement.

In his notice of deficiency dated June 20, 1988, respondent determined that petitioner had failed to make a timely and effective election for special use valuation. Prior to this time, apart from the recapture agreement omission, respondent did not notify petitioner that the information and documentation relating to special use valuation was insufficient, nor did he request additional information. Apart from the inventory and appraisement provided to respondent's representative on February 16, 1989, no written appraisals of the subject real property have been submitted to respondent.

The parties agree that petitioner did not make a protective election to specially value qualified real property within the meaning of section 20.2032A-8(b), Estate Tax Regs.

## Discussion

The value of property included in the gross estate of a decedent is generally the fair market value of the property interest at the time of death. Sec. 2031(a). The Tax Reform Act of 1976, in adding section 2032A to the Internal Revenue Code, adopted an alternative means for valuing real property used in family farming operations or other closely held businesses. Pub. L. 94-455, sec. 2003(a), 90 Stat.

1856. Section 2032A permits special valuation of property based on its actual use, as opposed to fair market value based on its highest and best use, for estate tax purposes. Sec. 20.2032A-3(a), Estate Tax Regs.; *Estate of Strickland v. Commissioner*, 92 T.C. 16, 21 (1989); *Estate of Gunland v. Commissioner*, 88 T.C. 1453, 1454 (1987).

An estate must meet several conditions to be eligible for special use valuation and strict compliance with section 2032A is generally required. See *Estate of Cowser v. Commissioner*, 736 F.2d 1168 (7th Cir. 1984), affg. 80 T.C. 783 (1983); *Estate of Abell v. Commissioner*, 83 T.C. 696 (1984). Among the conditions is that the estate must make an election on the Federal estate tax return. Sec. 2032A(a)(1)(B) and (d)(1). The manner of the election is prescribed by section 20.2032A-8(a)(3), Estate Tax Regs., which regulation is expressly authorized by the statute and valid. *Estate of Gunland v. Commissioner, supra* at 1456-1458; see *Prussner v. United States*, 896 F.2d 218, 222 (7th Cir. 1990). Section 20.2032A-8(a)(3), Estate Tax Regs., requires as an attachment to the estate tax return a notice of election containing 14 items of information.

Another requirement for special use valuation, separate from the notice of election, is the filing of a written recapture agreement, which relates to the contingent imposition of an additional estate tax. Sec. 2032A(a)(1)(B) and (d)(2); sec. 20.2032A-8(c)(1), Estate Tax Regs. The recapture agreement must be signed by each person with an interest in the specially valued property, who thereby consents to the application of section 2032A(c). Sec. 2032A(d)(2). Section 2032A(c) generally imposes an additional estate tax if, within 10 years after the decedent's death, a qualified heir disposes of an interest in qualified real property (other than by disposition to a family member) or the qualified heir ceases to use the property for the qualified use. For qualified heirs, the recapture agreement must express consent to personal liability under section 2032A(c) should the additional estate tax be triggered. Sec. 20.2032A-8(c)(1), Estate Tax Regs.; see sec. 2032A(c)(5).

Petitioner admittedly failed to file either a notice of election or a recapture agreement with the estate tax return. Petitioner argues, however, that it substantially

complied with the applicable requirements and is thus entitled to special use valuation under section 2032A. We hold otherwise.

*Section 2032A(d)(3)*

One statutory provision that is somewhat forgiving of less than strict compliance is section 2032A(d)(3), which provides as follows:

(3) MODIFICATION OF ELECTION AND AGREEMENT TO BE PERMITTED.— The Secretary shall prescribe procedures which provide that in any case in which—
> (A) the executor makes an election under paragraph (1) within the time prescribed for filing such election, and
> (B) substantially complies with the regulations prescribed by the Secretary with respect to such election, but—
>> (i) the notice of election, as filed, does not contain all required information, or
>> (ii) signatures of 1 or more persons required to enter into the [recapture] agreement * * * are not included on the agreement as filed, or the agreement does not contain all required information,
the executor will have a reasonable period of time (not exceeding 90 days) after notification of such failures to provide such information or agreements.

Section 2032A(d)(3), as added by the Deficit Reduction Act of 1984, applies retroactively to decedents dying after December 31, 1976. Pub. L. 98-369, sec. 1025(a) and (b)(1), 98 Stat. 1030.

As provided in section 2032A(d)(3)(B), in order for an estate to benefit from section 2032A(d)(3), there must be substantial compliance with the regulations applicable to the special use valuation election. Section 20.2032A-8(a)(3), Estate Tax Regs., requires the attachment of both a notice of election and a recapture agreement to the estate tax return. Failure to attach a recapture agreement, whether or not a notice of election is attached, alone precludes the requisite substantial compliance. *Prussner v. United States, supra; McDonald v. Commissioner,* 853 F.2d 1494, 1497-1498 & n. 7 (8th Cir. 1988), affg. in part and revg. in part 89 T.C. 293 (1987); see *Estate of Gunland v. Commissioner, supra.*

Petitioner makes two principal arguments that its initial omission of a recapture agreement is not dispositive. First,

on brief petitioner argues that decedent's qualified heirs will be liable for any additional estate tax under section 2032A(c), by operation of California law, even without a formal, binding recapture agreement. According to petitioner, recapture agreements are therefore superfluous in California and section 2032A(d)(2), which requires an executed written agreement, ought to be deemed satisfied in this case. Petitioner cites *Estate of Libeu,* 205 Cal. App. 3d 1436, 253 Cal. Rptr. 456 (1988).

We recognize that State law is sometimes applicable to the recapture agreement. For example, regarding who has an interest in the property to be specially valued and thus must execute the recapture agreement, the regulations provide: "An interest in property is an interest which * * * can be asserted under applicable local law so as to affect the disposition of the specially valued property by the estate." Sec. 20.2032A-8(c)(2), Estate Tax Regs. As another example, for a recapture agreement to be curable under section 2032A(d)(3), "the agreement as originally filed must at a minimum be valid under State law." H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 495; see also S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 876.

Despite the possible application of State law to the recapture agreement, petitioner's reliance on *Estate of Libeu, supra,* is misplaced. Granted, the California court determined that certain persons would be liable for the additional estate tax even though the recapture agreement they signed did not properly designate them as qualified heirs consenting to personal liability. The court did not, however, invoke California law to reach this result. Indeed, in response to an argument that California law supported a certain allocation of the liability, the court discussed the doctrine of Federal preemption and stated: "We conclude that the provisions of section 2032A, not California law, govern the allocation of the recapture tax in this case." 205 Cal. App. 3d at 1444, 253 Cal. Rptr. at 460. In addition, the parties in *Estate of Libeu* apparently did not ask the court to decide how the deficient recapture agreement affected the section 2032A(d)(3) analysis. See 205 Cal. App. 3d at 1442-1443, 253 Cal. Rptr. at 459. *Estate of Libeu* does not

remedy petitioner's failure to file a recapture agreement with the estate tax return.

Petitioner's second argument for excusing its omitted recapture agreement is before the Court as a written request for judicial notice. Although not clear from the request, which we have had filed as a motion, petitioner appears to argue that respondent should be deemed to have conceded the irrelevance of a formal and timely recapture agreement because the Government made some kind of concession to this effect in another case. Petitioner relies on a brief (Brief for Appellant) filed with the U.S. Court of Appeals for the Seventh Circuit in *Smoot v. United States*, 892 F.2d 597 (7th Cir. 1989) (No. 88-2058). In the cited brief, the Government states: "The agreement signed by the qualified heirs merely tracks the language of the statute and *adds nothing to the heirs' liability that the statute does not already impose.*" Brief for Appellant at 10 (emphasis in petitioner's motion papers).

Aside from whether something done in a totally unrelated case is relevant here, we note that petitioner takes this excerpt out of context. The Government in effect argued that a recapture agreement would not serve independently to impose liability if the statutory conditions in section 2032A(c) were absent: "Since the [recapture] agreement is contingent on liability under * * * [section 2032A(c)], it would seem to follow that, if there is no liability under Section 2032A(c), then no further remedies are given the Government by Section 2032A(d)(2) and the [recapture] agreement." Brief for Appellant at 32 n. 15. Similar facts and issues are not before us here. Because we find the cited brief to be irrelevant, and thus of no benefit to petitioner, we will deny petitioner's motion.

Despite the lack of a formal notice of election attached to the estate tax return, petitioner asserts that the return as filed included much of the information that would otherwise be found in such a notice. Respondent does not dispute that some of the information is included in the filed return. Furthermore, this Court has recently stated that, of the 14 items to be included in a notice of election under the regulations, "there are certain informational items that do not relate to the substance or essence of the statute."

*Estate of Strickland v. Commissioner,* 92 T.C. 16, 29 (1989). Nonetheless, we need not examine the 14 informational items of section 20.2032A-8(a)(3), Estate Tax Regs., one by one because for purposes of section 2032A(d)(3) the notice of election is independent of, and cannot cure the complete lack of, a recapture agreement. *Prussner v. United States, supra.*

Even if a timely recapture agreement had been filed in this case, petitioner's concededly omitted information, in the aggregate, precludes substantial compliance with section 20.2032A-8(a)(3), Estate Tax Regs.

Petitioner admits that the return does not contain enough information to fully satisfy the following items, which we paraphrase from section 20.2032A-8(a)(3), Estate Tax Regs.: (iv) the fair market value and special use value of the real property to be specially valued; (v) the adjusted value (under section 2032A(b)(3)(B)) of all real property used in a qualified use and passing to a qualified heir, and the adjusted value of all real property to be specially valued; (vii) the adjusted value of the gross estate (under section 2032A(b)(3)(A)); (ix) copies of written appraisals of the fair market value of the real property; (x) a statement that the decedent or a family member has owned all specially valued real property for at least five of the eight years preceding the decedent's death; (xi) any periods during this eight years in which the decedent or a family member did not own the property, use it in a qualified use, or materially participate (under section 2032A(e)(6)) in the operation of the farm or other business; (xii) specific identification of each person taking an interest in specially valued property and the values of such interests (both fair market value and special use value); and (xiii) affidavits identifying material participants and their relevant activities.

To place these omissions in rough perspective, we note that this Court has found the omission of a single item from a notice of election to be sufficient, under some circumstances, to prevent substantial compliance under section 2032A(d)(3). *Estate of Strickland v. Commissioner, supra* at 29. We also note that none of petitioner's admitted informational omissions are among those that we have indicated to be relatively minor under the legislative history of section

2032A(d)(3) and which "do not relate to the substance or essence of the statute." *Estate of Strickland v. Commissioner, supra* at 28-29.

We hold that petitioner failed to substantially comply with the applicable regulations within the meaning of section 2032A(d)(3)(B). Accordingly, we need not consider the effect of the 90-day notice provision.

*Section 1421 of the Tax Reform Act of 1986*

Petitioner also contends that a 1986 amendment to section 2032A forgives petitioner's failure to comply fully with the regulations. Section 1421 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2716 (hereinafter referred to as section 1421), as amended and pertinent here, provides as follows:

(a) IN GENERAL.—In the case of any decedent dying before January 1, 1986, if the executor—

(1) made an election under section 2032A of the Internal Revenue Code of 1954 on the return of tax imposed by section 2001 of such Code, and

(2) provided substantially all the information with respect to such election required on such return of tax,

such election shall be a valid election for purposes of section 2032A of such Code.

(b) EXECUTOR MUST PROVIDE INFORMATION.—An election described in subsection (a) shall not be valid if the Secretary of the Treasury or his delegate after the date of enactment of this Act requests information from the executor with respect to such election and the executor does not provide such information within 90 days of receipt of such request.

Petitioner maintains that it provided substantially all the information required on the estate tax return and that, with the possible exception of an omitted recapture agreement, respondent has never requested further information concerning the election.

The courts that have considered section 1421 have differed greatly in their interpretations. There appear to be two primary reasons for such disparate views. First, the words of the statute do not correlate well with the legislative history. Compare *Prussner v. United States, supra; Foss v. United States,* 63 AFTR 2d 1503, 88-1 USTC par. 13,762 (D. Minn. 1987), revd. 865 F.2d 178 (8th Cir. 1989) (emphasizing statute), with *McDonald v. Commissioner,* 89 T.C. 293, 307-308 (1987), affd. on this issue on

another ground 853 F.2d 1494 (8th Cir. 1988); *Estate of Johnson v. Commissioner*, 89 T.C. 127, 133 n. 8 (1987) (emphasizing legislative history). Second, section 1421(a)(2) and section 1421(b) make ambiguous references to "information."

The courts generally agree that section 1421(a) will validate an election if both of the following are true: (1) The estate timely filed the June 1982 version of Form 706, and (2) the only transgression under the statute and the regulations was a failure to attach a recapture agreement to the return. (The legislative history expressly targets the "March 1982" version of Form 706. H. Rept. 99-841 (Conf.) (1986), 1986-3 C.B. (Vol. 4) 771. What Congress meant, however, was "June 1982." *Prussner v. United States, supra* at 226; General Explanation of the Tax Reform Act of 1986, prepared by the Staff of the Joint Committee on Taxation (May 4, 1987), at 1256.) The courts are less uniform, however, in their views of whether section 1421(a)(2) is satisfied in other circumstances. A related issue not yet definitively resolved is the meaning of section 1421(b), by the terms of which the IRS requests and the estate provides additional information.

*Prussner v. United States*, 896 F.2d 218 (7th Cir. 1990), is the current high-water mark in terms of eligibility for section 1421 relief:

> There is nothing [in section 1421] about filing a recapture agreement or for that matter a notice of election. All that is required (in marked contrast to the Treasury regulation defining valid election for purposes of section 2032A) is the making of an election *on the estate tax return*—that is, the marking of the box for the election. The taxpayer who checks the box—that was done here—and provides substantially all the information that the return requires with respect to the election is home free. [896 F.2d at 225. Emphasis in original.]

The executrix in *Prussner* filed the January 1979 version of Form 706, which on its face directs the taxpayer to attach a recapture agreement, without attaching a recapture agreement. In finding that the estate was nonetheless entitled to section 1421 relief, the court noted that a recapture agreement itself is a commitment rather than information, and further noted that information required to be included in the recapture agreement by section 20.2032A-8(c), Estate

Tax Regs., "is not required on the return. So the failure to file the agreement with the return did not make the information required on the return incomplete." 896 F.2d at 225-226.

Because the case before us is not appealable to the Seventh Circuit, we are not bound by the holding in *Prussner*. See *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). We do not find the reasoning in *Prussner* persuasive and we respectfully decline to follow the Seventh Circuit view of the meaning and scope of section 1421.

Our analysis of section 1421 attaches some significance to the report of the Senate Finance Committee, S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 876, a source of legislative history not mentioned in *Prussner*. The pertinent provisions of the associated Senate bill are identical to section 1421(a) and (b) as eventually enacted. See H.R. 3838, sec. 1615, 99th Cong., 2d Sess. 2431 (1986).

We begin our examination of the statute with the "information" reference in section 1421(a)(2), which is part of a requirement that the estate provide "substantially all the information with respect to such election required on such return of tax." As indicated in the legislative history, this means that the estate must provide substantially all the relevant information requested by the face of Form 706:

> The bill provides that, if an estate * * * provided substantially all the information *elicited by Form 706,* * * * the election is valid if the estate provides * * * additional information necessary to perfect the election * * * . (This provision permits notices of election and agreements to the election to be filed late where the estate timely filed those documents *to the extent requested and described on Form 706.*) * * * [S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 876. Emphasis added.]

See also H. Rept. 99-841 (Conf.) (1986), 1986-3 C.B. (Vol. 4) 770 ("requirements enumerated on the Federal Estate Tax Return").

If the face of Form 706, however, makes no reference to a required "agreement" or to specific instructions describing a recapture agreement, then the estate is excused from attaching a recapture agreement to the filed return (assuming this is the only omission). This is so even if the unreferenced instructions are clear and detailed. We know

this because Congress specifically targeted for section 1421 relief those estates that filed the June 1982 version of Form 706 without an attached recapture agreement. See H. Rept. 99-841 (Conf.) (1986), 1986-3 C.B. (Vol. 4) 770-771 (as supplemented by our earlier point that "March 1982" means "June 1982"). The face of Form 706 (June 1982) makes reference neither to a required "agreement" nor to the applicable parts of the instructions, yet those instructions include detailed requirements relating to both the notice of election and the recapture agreement.

In contrast to the June 1982 version of Form 706, if the face of the applicable Form 706 refers expressly to a required "agreement" or to specific instructions that describe a recapture agreement, then Congress appears to have intended the "information with respect to such election required on such return of tax" to expand accordingly. See *Foss v. United States,* 865 F.2d 178, 180-181 (8th Cir. 1989). An estate will then satisfy section 1421(a)(2) only if it provides substantially all of the expanded information base. The reason the estate should be held to a higher level of compliance under these circumstances is that the face of the Form 706 is sufficient to alert the estate to additional requirements, and misled taxpayers were the exclusive congressional concern underlying section 1421:

### Reasons for Change

The committee is concerned that, in certain cases, the Federal estate tax return (Form 706) provided by the Treasury Department for filing estate tax returns did not sufficiently inform taxpayers of what information must be provided to elect current use valuation and that an agreement to the election is required to be attached to Form 706. The committee determined, therefore, that limited relief permitting taxpayers additional time to supply information is appropriate *where taxpayers could have been misled by an absence of information on Form 706.* [S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 876. Emphasis added.]

As noted above in our discussion of section 2032A(d)(3), the omission of a recapture agreement precludes substantial compliance with the applicable regulations. Assimilating the established importance of a recapture agreement into the foregoing analysis of section 1421(a)(2), we find the following as a matter of law. If the face of the applicable Form 706, including directions thereon, refers to a necessary

"agreement" (or "agreements") or refers to specific "instructions" that describe a necessary recapture agreement, then an estate that fails to attach a recapture agreement to the return has not provided "substantially all the information * * * required on such return of tax" within the meaning of section 1421(a)(2).

We consequently disagree with the Seventh Circuit position that a recapture agreement requirement referred to on the face of Form 706 does not make the recapture agreement "information" as that word is used and qualified in section 1421(a)(2). See *Prussner v. United States*, 896 F.2d at 225-226, 228. We recognize that section 2032A(d)(3) appears to regard recapture agreements as something other than information. See 896 F.2d at 228. Excerpts from the section 1421 legislative history also suggest a difference. E.g., H. Rept. 99-841 (Conf.) (1986), 1986-3 C.B. (Vol. 4) 770 (under "Present Law"); S. Rept. 99-313, 1986-3 C.B. (Vol. 3) 876 (under "Reasons for Change"). Nonetheless, we believe that other considerations weigh more heavily in the balance.

"Information" is not a technical term of art. It is instead an ordinarily vague reference with many possible meanings, depending on the context. Nowhere is this more aptly demonstrated than in the following passage: "The committee determined, therefore, that limited relief permitting taxpayers additional time *to supply information* is appropriate where taxpayers could have been misled by an *absence of information on Form 706.*" S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 876 (emphasis added). "Information" is plainly used here in two different ways within the same sentence, first referring to what the taxpayer supplies and then referring to how Form 706 reads. It is not at all surprising that a similar lack of precision appears in the corresponding statute. The same legislative history source also tells us more directly that a recapture agreement may be considered information. Sandwiched between references to requested additional information is this parenthetical: "(This provision permits * * * agreements to the election to be filed late where the estate timely filed those documents to the extent requested and described on Form 706.)" S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 876. See also H. Rept. 99-841 (Conf.) (1986), 1986-3 C.B. (Vol. 4) 771.

The second reference to "information" in section 1421 is in subsection (b): "An election described in subsection (a) shall not be valid if the Secretary * * * requests information from the executor with respect to such election and the executor does not provide such information within 90 days of receipt of such request." Although we do not rely on this provision in resolving the instant case, we discuss it in some detail to demonstrate that our interpretation of section 1421 as a whole is both sensible and consistent with congressional intent.

Despite the clear emphasis on taxpayer relief in section 1421, there is not even a hint in the legislative history that Congress intended to limit what the IRS can request or what the estate must then provide within 90 days, so long as it relates to a requirement of the election. Section 1421 relaxes the timeliness requirement for certain parts of the election, but does not purport to relax the required contents of the election. See H. Rept. 99-841 (Conf.) (1986), 1986-3 C.B. (Vol. 4) 770-771; S. Rept. 99-313, 1986-3 C.B. (Vol. 3) 876; *Estate of Gunland v. Commissioner*, 88 T.C. 1453, 1455 (1987) (contents of the election are prescribed by section 20.2032A-8(a)(3), Estate Tax Regs., under the authority of section 2032A(d)(1)).

Accordingly, section 1421(b) information must be everything that section 2032A and the corresponding regulations require for a valid election. This includes a notice of election and a recapture agreement, regardless of whether the estate was misled by the face of Form 706. In other words, even if section 1421(a)(2) excuses an estate that uses the June 1982 version of Form 706 from filing a timely recapture agreement, a recapture agreement remains fair game for an IRS request under section 1421(b).

We recognize that the normal rules of statutory construction attribute the same meaning to words used more than once in the same section. Our broad reading of "information" in section 1421(b) thus may appear to be, at first glance, unjustifiably inconsistent with our narrower (though expandable) reading of section 1421(a)(2). This superficial inconsistency, however, is negated by the differing contexts in which the statute presents the word "information" and

the conspicuous lack of a cross-reference between the two uses.

With respect to the contexts, section 1421(a)(2) refers to information "required on such return of tax," yet section 1421(b) has no such qualifier. With respect to cross-references, if Congress had intended the "information" in the two provisions to be the same, it presumably would have preceded the reference in subsection (b) with "the missing" or "the omitted." In this regard, we note that section 1421 is otherwise replete with internal cross-references. In subsection (a), for example, initial references to "an election," "the Internal Revenue Code," and "the return" are followed by "such election," "such Code," and "such return"; as another example, subsection (b) cross-references subsection (a) for the description of "election."

Based on the foregoing analysis, we decline to adopt the view of the Seventh Circuit that an estate can provide all the information described in section 1421(a)(2) even if a recapture agreement is not attached to the filed estate tax return. Although we agree with this view in the specific context of the June 1982 version of Form 706, we do not agree that it applies to a version that on its face alerts the estate to the necessity of a recapture agreement, such as the 1979 version at issue in *Prussner* and the 1985 version at issue in this case. Form 706 (March 1985) on both page 2 and Schedule N directs the taxpayer to complete and attach "agreements" described in the Schedule N "instructions." Petitioner's failure to comply, even partially, with these express directions leads us to hold that petitioner did not satisfy section 1421(a)(2).

Additionally, setting aside the omission of the recapture agreement, petitioner has failed to provide substantially all of the *other* information with respect to the election required on the estate tax return, even under the analysis, as we understand it, in *Prussner.* The Seventh Circuit in *Prussner* would apparently require the taxpayer to meet the "substantially all" standard at least for special use valuation data that the face of Form 706 directs the taxpayer to enter on, rather than attach to, Form 706. See 896 F.2d at 225-226. Schedule N of Form 706 (March 1985), which is entitled "Section 2032A Valuation" and refers to "specially

valued property," on its face clearly relates to the special use valuation election. The applicable response lines on Schedule N are thus presumably "information" receptacles for purposes of section 1421(a)(2).

Petitioner's failure to include "Identifying number[s]" for Darrell Merwin and Gary Merwin on Schedule N is not alone significant, in part because those numbers appear elsewhere on the return. (Petitioner apparently thought it was supposed to identify the subject real property rather than the people with property interests.) Also, petitioner's failure to include a total special use value on Schedule N is arguably not fatal because that information, parcel by parcel, appears in petitioner's Annexation A following Schedule A.

Nowhere on the return, however, did petitioner list even the total fair market value of the specially valued property. Schedule N, as formatted, goes a step further and calls for that information to be broken down by property interest recipient. See sec. 20.2032A-8(a)(3)(xii), Estate Tax Regs. Petitioner's only entry in the "Fair market value" column is "Life estate" on the line for Darrell Merwin. Fair market values presumably were not available until sometime after the filing of petitioner's return because respondent has only been provided with a written appraisal dated after the filing date of the return. We note that the legislative history of section 2032A(d)(3), with a "substantially complies" standard rather than a "substantially all information" standard, does not allow for untimely obtained appraisals. H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 495. Petitioner also failed to allocate the total special use value between Darrell Merwin and Gary Merwin, as called for by the Schedule N format, or else did so incorrectly, by leaving the line for Darrell Merwin blank and inserting "152,583" on the line for Gary Merwin.

In light of the cumulative effect of these omissions and errors, we cannot conclude that petitioner satisfied any reasonable interpretation of section 1421(a)(2), including what we understand to be the position of the Seventh Circuit in *Prussner.*

An order will be issued denying petitioner's motion for judicial notice.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

CHABOT, PARKER, HAMBLEN, COHEN, JACOBS, GERBER, WRIGHT, PARR, WELLS, COLVIN, and HALPERN, *JJ.*, agree with this opinion.

RUWE, *J.*, concurs in the result only.