ESTATE OF MALCOLM MCALPINE, JR., DECEASED;
GERALDINE MCALPINE AND JOCELYN MCALPINE
GREEMAN, CO-INDEPENDENT EXECUTRIXES,
PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 28298-87.        Filed January 24, 1991.

*Patrick R. Gordon,* for the petitioner.
*Phillip A. Pillar,* for the respondent.

OPINION

DRENNEN, *Judge:* This case was submitted fully stipulated and the facts as stipulated are so found. Respondent determined a deficiency in the estate tax of the Estate of Malcolm McAlpine, Jr., in the amount of $333,363.24, subject to credits for payments of State death taxes.

Petitioner is the Estate of Malcolm McAlpine, Jr., deceased. Geraldine McAlpine and Jocelyn McAlpine Greeman are co-independent executrixes.

Malcolm McAlpine, Jr. (hereinafter referred to as decedent), died testate on February 25, 1984. He was a citizen

of the United States and a resident of Texas at the time of his death. His will was dated July 28, 1982; a codicil thereto was executed February 24, 1984. Geraldine McAlpine and Jocelyn McAlpine Greeman were named and duly appointed co-independent executrixes of the will. Geraldine resided in Toyak, Texas, and Jocelyn resided in Denning, New Mexico, at the time the petition was filed in this case.

A timely Federal estate tax return was filed for the estate on November 20, 1984, in Austin, Texas, reporting a net taxable estate of $602,693 and a net estate tax of $83,389.

Decedent owned 8,815.42 acres out of a total of 13,280 acres of a ranch located in Huerfano County, Colorado, at the date of his death.

The issue in this case is whether petitioner is entitled to a special use valuation of decedent's interest in the ranch under section 2032A for estate tax purposes.[1]

Petitioner's interest in the ranch (referred to hereafter as the ranch) was reported at item 5 of Schedule A of the estate tax return. On page 2 of the return petitioner elected special use valuation for the ranch pursuant to section 2032A.

The appropriate Schedule N to elect special use valuation was properly completed and included with decedent's estate tax return, Form 706. Except with respect to the portion of the definition of "qualified real property" referring to the agreement under section 2032A(b)(1)(D), the parties agree that pursuant to section 6324B a valid lien was imposed on the ranch at the time the notice of election was filed with the Form 706.

A separate notice of election to specially value the ranch required by section 2032A(d)(1) was properly completed, complied with the requirements of section 20.2032A-8(a)(3), Estate Tax Regs., and was attached to decedent's Form 706.

The agreement required by section 2032A(d)(2) (hereinafter referred to as the recapture agreement) was filed with decedent's Form 706 and was executed by "Jocelyn

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1954 as amended and in effect at the date of decedent's death. All Rule references are to the Tax Court Rules of Practice and Procedure.

McAlpine Greeman, Trustee" as qualified heir and "Jocelyn McAlpine Greeman" as an other interested party. Except for the signatures, the agreement was properly completed and complied with the requirements of the applicable Treasury regulations.

Decedent's will was duly probated in Taylor County, Texas. In addition to Geraldine, his wife, and Jocelyn, his daughter, decedent was survived by three grandchildren, whose names and ages were as follows:

| Name | Ages as of Feb. 25, 1984 |
|---|---|
| Walter Greeman | 22 |
| Adelia Greeman | 20 |
| Tammy Jo Greeman | 9 |

All of decedent's title and interest in the ranch passed at his death to a trust, according to section V of the will.

Section V(a) of the will divided the trust into a separate trust for each of the grandchildren according to the terms thereof.

Section V(b) of the will provided for distribution of income and principal in accordance with the terms therein. Section V(c) generally provided conditions for termination of each trust, subject to the provisions of section V(d) of the will. Section V(e) contains a "spendthrift" clause that denies a right or power of any beneficiary to anticipate by assignment or otherwise any income or principal given to such beneficiary by the will and prohibits a transfer, assignment, sale, pledge, encumbrance, or change in any manner, by a beneficiary of the beneficiary's interest in the trust; nor shall a beneficiary's share of income or principal of the trust be subjected to or applied to the payment of such beneficiary's debts.

Section V(h) of the will generally vested the management powers of the trust in the trustees, according to the terms stated therein and in accordance with the Texas Trust Act, as amended by the Texas Trust Code. Section V(l) of the will creates a special power of appointment in Jocelyn as to each of the trusts' corpora according to the terms stated therein.

The ranch was valued at the following special use values and fair market values by the parties in the exhibits so identified:

| Item | Special use value | Fair market value | Exhibit II |
|------|------|------|------|
| a. Per 706 | $416,667 | $1,166,667.00 | 2-B |
| b. Per notice of deficiency | - - - | 1,327,602.25 | 1-A |

The parties agree that the proper fair market value of the ranch at the date of decedent's death was $1,327,602.25. The parties also agree that if petitioner qualifies for special use valuation, the value of decedent's interest in the ranch and includable in the estate should be the following total value:

| Item | Amount |
|------|------|
| Fair market value, as stipulated | $1,327,602.25 |
| Less special use value per return | (276,408.00) |
| Difference | 1,015,194.25 |
| Less maximum sec. 2032A deduction | (750,000.00) |
| Excess fair market value | 301,194.25 |
| Plus special use value | 276,408.00 |
| Total value | 577,602.25 |

On or about September 11, 1985, respondent's agent commenced an examination of petitioner's estate tax return. On the same date respondent advised petitioner that the special use value election was invalid because the agreement attached to the election was signed only by Jocelyn McAlpine Greeman, Trustee, and was not signed by decedent's grandchildren, the individual trust beneficiaries.

On December 10, 1985, petitioner filed an amended notice of election under section 2032A and an amended agreement to special use valuation under section 2032A, dated December 5, 1985. These two documents were received by respondent within 90 days of respondent's notice to petitioner. The amended agreement was signed by all of the trust beneficiaries, individually, except for Tammy Jo Greeman, whose signature was made by Jocelyn, as Guardian Ad Litem for Tammy Jo Greeman, pursuant to a court order. The amended agreement was similar to the agreement filed with the estate tax return and complied with all requirements of the Form 706 instructions, section 2032A(d)(2), and the Treasury regulations pertaining thereto.

A notice of deficiency in estate tax was mailed to petitioner on May 12, 1987, and was issued by an officer of the Internal Revenue Service at Dallas, Texas. The notice determined that there was a deficiency in the estate tax due by the estate of $403,684.86, less $68,321.62 of additional State death tax credit, if substantiated. The principal adjustment in the value of the gross estate, and the only one at issue here, was explained as based on the determination that decedent's interest in the ranch did not qualify for special use valuation under section 2032A. Consequently, it was determined that the fair market value at the date of decedent's death for the ranch real property in which decedent owned both whole and fractional interests was $1,327,602.25 instead of the $416,667 value reported on the estate tax return, thereby increasing the value of the taxable estate by $910,935.25. An estate tax deficiency of $403,684.86 was determined.

The remaining 4,464.48 acres of the ranch is owned outright by Jocelyn. The ranch had been owned and operated by decedent's family for over 45 years and decedent was actively engaged in the trade or business of cattle and horse ranching, utilizing the ranch up until his death as he had been during his entire life. The parties agree that the ranch was "qualified real property" as described in section 2032A(b).

Respondent admits that, except for the omission of individual signatures of the grandchildren as trust beneficiaries, the agreement required by section 2032A(d)(2), as originally filed with the estate tax return, "was complete, valid and complied with all requirements of section 2032A, and that petitioner qualifies for Special Use Valuation pursuant to section 2032A."

Several other agreements and concessions made by the parties in the stipulation of facts are accepted and should be reflected in the final computation of the estate tax due from the estate.

The only issue for our decision is whether decedent's interest in the ranch at the time of his death is includable in his gross estate at its fair market value or at its special use value under section 2032A. The parties are in agreement on the value to be used in either event.

More specifically the issue is whether the failure to have the trust beneficiaries themselves sign the notice of election and recapture agreements that were attached to the original estate tax return was such a failure that precluded the executor from taking advantage of the grace period provided by section 2032A(d)(3)(B) of the Code and section 20.2032A-8, Estate Tax Regs.

Normally the value of property includable in the decedent's gross estate is its fair market value at the time of decedent's death unless the executor elects the alternative valuation method under section 2032. Sec. 20.2031-1(b), Estate Tax Regs. However, in 1976 Congress enacted section 2032A(a)(1), which provides that if the decedent (at the time of his death) was a citizen or resident of the United States and the executor elects the application of that section and files the agreement referred to in subsection (d)(2), then the value of qualified real property shall be its value for the use under which it qualifies, under subsection (b), as qualified real property (commonly referred to as special use value). Subsection (b) provides, for purposes of this section, that qualified real property means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of decedent's death, was being used for a qualified use, by the decedent or a member of decedent's family if certain specified requirements are met.

These provisions were enacted by Congress primarily to permit the families of small family farmers and businessmen to continue using the property for that purpose without having to sell it to pay the greater estate taxes that would probably result if the property was taxed at its fair market value or its highest and best use value. See explanation of Senate Floor Amendment to the Tax Reform Act of 1984, Pub. L. 98-369, 7/18/84, by Mr. Dixon. Par. 120,328.1, P-H Federal Estate and Gift Taxes. See *Estate of Maddox v. Commissioner*, 93 T.C. 228 (1989). But Congress obviously wanted to limit the relief to those who actually used the property for the protected purpose, by attaching rather stringent requirements on those who elected to use it. As might have been expected, this required rather complex

legislation which has opened the door to many diverse arguments as to whether a specific transaction complied with all the requirements of the law and regulations. The IRS, possibly fearing that taxpayers would attempt to take undue advantage of the relief provision, ruled time and again that a taxpayer estate did not qualify for special use valuation because of its technical failure to comply with all the requirements of the law and regulations. See list of adverse letter rulings in P-H Federal Estate and Gift Taxes, par. 120,329.3 (1989). On the other hand, Congress has emphasized its intent to grant the relief where it was deserved by amending the law from time to time to ease the legal requirements and the method of complying therewith. Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494; Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085; Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342. It seems obvious that Congress intended to make these relief provisions available to deserving estates.

The specific provisions of the law and regulations with which we are concerned here are those which determine whether the executrix made a valid election of special use valuation and, if not, whether it could be supplemented or perfected to meet all the requirements.

Section 2032A(b)(2) defines "qualified use," for purposes of this section, as the devotion of the property to any of the following:

(A) use as a farm for farming purposes, or
(B) use in a trade or business other than the trade or business of farming.

There is no question that the ranch was being used for a qualified purpose at the time of decedent's death. However, section 2032A(a)(1)(B) requires that in order to take advantage of this relief provision the executor must file an election to have the section applied and must file the agreement referred to in subsection (d)(2). Subsection (d)(1) provides that the election under this section shall be made on the return of the tax imposed by section 2001 in such manner as the Secretary by regulations prescribes and the election, once made, shall be irrevocable. Subsection (d)(2)

provides that the agreement referred to in this paragraph is a written agreement signed by each person in being who has an interest (whether or not in possession) in any property designated in such agreement consenting to the application of subsection (c) with respect to such property.

Section 2032A(c)(1) provides that if, within 10 years after the decedent's death, and before the death of the qualified heir, (A) the qualified heir disposes of any interest in qualified real property (other than by a disposition to a member of his family), or (B) the qualified heir ceases to use for the qualified use the qualified real property which was acquired (or passed) from the decedent, then there is imposed an additional estate tax. The qualified heir shall be personally liable for the additional tax imposed with respect to his interest unless the heir has furnished bond which meets the requirements of section 2032A(e)(11).

Section 20.2032A-8(a)(3), Estate Tax Regs., provides that an election under section 2032A is made by attaching to a timely filed estate tax return the agreement described in paragraph (c)(1) of this section and a notice of election which contains the information thereinafter listed. The provision with which we are directly concerned is subparagraph (xii), which requires giving the name, address, taxpayer identification number, and relationship to the decedent of each person taking an interest in each item of specially valued property, and the value of the property interests passing to each person based on both fair market value and qualified use.

Here Jocelyn checked the box on the timely filed estate tax return that indicated an election of special use valuation. A Schedule N was also attached with the names, addresses, and relationship to decedent of each of the three grandchildren as persons receiving an interest in each item of specially valued property, and also the fair market value and special use value of the interests of each in the specially valued property. An "agreement to special valuation under section 2032A" was also attached which was signed by Jocelyn McAlpine Greeman, Trustee, for the three trusts for the three grandchildren established under the terms of the will and specifically agreeing and consenting to personal liability under subsection 2032A for the

additional tax imposed by that subsection with respect to the interests of the grandchildren in the event of the early disposition of their interests in the property. Petitioner also filed an amended estate tax return within 90 days after respondent's agent notified petitioner that the special use election was invalid because the recapture agreement did not have the signatures of the three grandchildren who are trust beneficiaries. The amended return elected special use valuation for the ranch and also had attached to it an amended recapture agreement signed by or for all the trust beneficiaries.

Petitioner made a rather extended argument on brief that under local law the trustee of the trust was the interested party required to sign the election and recapture agreement, and the grandchildren, as trust beneficiaries, did not take a vested interest in any of the specially valued property and consequently did not have to be listed as interested parties in the election nor required to execute the agreement required under section 2032A(a)(1)(B) and (d)(1) and (2). Since we find that the election and the agreement were amended within the permitted time to include the grandchildren, and they all signed the documents, or had their names signed for them, and that such amended documents meet all the requirements for special use valuation, we do not find it necessary to consider petitioner's argument on this point.

Respondent argues that the election was not valid because neither it nor the recapture agreement contained all the information required by the regulations, referring primarily to naming all persons taking an interest in each item of the specially valued property and the value of the property interests passing to each such person.

We disagree. All of the "information" required by the regulations was provided on the original return. Only the signatures of the trust beneficiaries were missing. As noted above, the box on the return indicating election of special use valuation was checked. A Schedule N—Section 2032A Valuation—listing the names of the three grandchildren, their addresses, their relationship to decedent, and both the fair market value and special use value of the interests in the property each was to receive was attached to the original return. And a notice of election containing the

information required by section 20.2032A-8(a)(3), Estate Tax Regs., except the names of the trust beneficiaries, was also attached. In addition a "recapture" agreement was attached, executed by Jocelyn McAlpine Greeman, as trustee for the qualified heirs and as an other party having an interest in the special use property, was also attached. This recapture agreement attached to the original return did list the names and addresses of each of the trust beneficiaries and the value of the interests in the special use property of each of the beneficiaries. The only thing missing was an agreement signed by the qualified heirs agreeing to the election and agreeing to be bound thereby. This was filed within 90 days after respondent notified petitioner that the election of special use valuation was invalid, and respondent agrees that if the estate tax return can be perfected in this manner, the estate qualifies for special use valuation.

The law itself does not specifically require the beneficiaries to sign the election or the agreement when the return is filed. In fact subparagraph (B)(ii) of section 2032A(d)(3) does mention signatures and would appear to specifically give relief under circumstances such as here present. Section 2032A(d)(3) provides:

(3) MODIFICATION OF ELECTION AND AGREEMENT TO BE PERMITTED.— The Secretary shall prescribe procedures which provide that in any case in which—

(A) the executor makes an election under paragraph (1) within the time prescribed for filing such election; and

(B) substantially complies with the regulations prescribed by the Secretary with respect to such election, but—

(i) the notice of election, as filed, does not contain all required information, or

(ii) signatures of 1 or more persons required to enter into the agreement described in paragraph (2) are not included on the agreement as filed, or the agreement does not contain all required information,

the executor will have a reasonable period of time (not exceeding 90 days) after notification of such failures to provide such information or agreements.

## Section 20.2032A-8(a), Estate Tax Regs., provides:

(1) *In general.* An election under section 2032A is made as prescribed in paragraph (a)(3) of this section and on Form 706, United States Estate Tax Return. * * *

* * * * * * *

(3) *Time and manner of making election.* An election under this section is made by attaching to a timely filed estate tax return the agreement described in paragraph (c)(1) of this section and a notice of election which contains the following information: * * *

Section 20.2032A-8(c), Estate Tax Regs., provides:

(1) *In general.* The agreement required under section 2032A(a)(1)(B) and (d)(2) must be executed by all parties who have any interest in the property being valued based on its qualified use as of the date of the decedent's death. In the case of a qualified heir, the agreement must express consent to personal liability under section 2032A(c) in the event of certain early dispositions of the property or early cessation of the qualified use. * * *

In this case an election was made on the estate tax return and a recapture agreement was also attached to the return. The only problem was that the agreement was signed by the executrix-trustee rather than the heirs. However, an amended agreement was filed within 90 days after notification by respondent's agent which not only contained all the information required by the regulations but also was signed by all of the interested parties (the heirs). This would appear to qualify the election as valid under section 2032A(d)(3) and section 20.2032A-8, Estate Tax Regs. The fact that the regulation does not contain a provision permitting perfection within 90 days does not, and cannot, nullify the provision permitting perfection in section 2032A(d)(3).

Section 1421 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2716, provides further support for this conclusion. Section 1421 of the Tax Reform Act of 1986 is quite similar to section 2032A(d)(3) and provides that "In the case of any decedent dying before January 1, 1986, if the executor—(1) made an election under 2032A of the Internal Revenue Code of 1954 on the return of tax imposed by section 2001 of such Code within the time prescribed for filing such return, * * * and (2) provided substantially all the information with respect to such election required of such return of tax, such election shall be a valid election for purposes of section 2032A of such Code." The statute says nothing about filing a recapture agreement or for that matter a notice of election; all that is required is the making

of an election on the estate tax return and providing all the information that the return requires. The conference report on the legislation said the statute was intended precisely for the benefit of taxpayers who had failed to file a recapture agreement on time.

This Court held in *Estate of Gunland v. Commissioner*, 88 T.C. 1453 (1987), that the taxpayer's failure to attach a recapture agreement to its original return defeated its attempted election of special use valuation. In doing so we also concluded that "substantial compliance" with the requirements of the law and regulations was insufficient to receive the benefits of special use valuation. Section 1421 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2716, was neither argued nor cited in the opinion, although the Court will take judicial notice that section 1421 was argued on a motion for reconsideration, which was denied in an order concluding that section 1421 did not apply to the facts of that case. *Estate of Gunland* is factually distinguishable from the case at hand because the recapture agreement was not attached to the original return and was not filed within 90 days after the estate tax return was filed.

In *McDonald v. Commissioner*, 89 T.C. 293 (1987), affd. as to this issue 853 F.2d 1494 (8th Cir. 1988), this Court considered a similar case. In that case, the widow of decedent, who would have taken the entire property under decedent's will, disclaimed her interest in the property, which left it to decedent's three children. A timely estate tax return was filed electing special use valuation. A notice of election and recapture agreement were both filed with the original return but were signed only by the widow and the personal representative of the estate. About 4 months later an amended estate tax return was filed for the estate attached to which was an amended agreement relating to special use valuation which was signed by decedent's three children and three of his grandchildren. The Court held that the election made in the original return did not meet the requirements of the regulations because not executed by all (or any) persons having an interest in the property (the widow who did execute the election and agreement had disclaimed all interest in the property) and that the

amended return, containing the signatures of the qualified heirs, filed outside the time limit, would not serve to retroactively cure the insufficiencies of the original return.[2] Thus the election was invalid and the estate did not qualify for special use valuation.

On appeal (*McDonald v. Commissioner*, 853 F.2d 1494 (10th Cir. 1988)), the Eighth Circuit affirmed the Tax Court holding that before a recapture agreement may be corrected by the addition of signatures, the agreement as filed with the original return must substantially comply with section 20.2032A-8, Estate Tax Regs., which requires that the agreement be in a form that is binding on all persons having an interest in the property. Noting that the recapture agreement filed with the original return was not executed by any of the parties with an interest in the property, since the children did not sign and the widow renounced her interest, it was not in substantial compliance with the requirement of the regulations and could not be perfected by an amended agreement filed out of time. *McDonald* is factually distinguishable from this case. In *McDonald* the notice of election and recapture agreement attached to the original estate tax returns were not executed by anyone who had an interest in the property (the widow having renounced her interest and none of the children having signed) and were not executed by the persons having an interest in the property until 4 months after the return was filed. The Court of Appeals, in affirming the Tax Court, stated "it is difficult to conclude that the original election was in substantial compliance * * * when it contained neither the name nor the signature of anyone with an interest in the property as of the date of Decedent's death." 853 F.2d at 1497. In this case the original documents did contain the names of all interested parties. The only thing lacking was their signatures.

Quite recently in *Prussner v. United States*, 896 F.2d 218 (7th Cir. 1990), the Seventh Circuit was faced with the issues here involved. That case was considered by this Court in *Estate of Merwin v. Commissioner*, 95 T.C. 168 (1990) (Court reviewed). We declined to follow the Seventh

[2] See *Estate of Johnson v. Commissioner*, 89 T.C. 127 (1987).

Circuit with regard to section 1421(a)(2) of the Tax Reform Act of 1986. We will not discuss it here.

This Court has been faced with the same issue we have here in several other recent cases, in each of which it held the election invalid. In *Estate of Johnson v. Commissioner,* 89 T.C. 127 (1987), the estate tax return upon which the election was made was untimely filed. In *Estate of Strickland v. Commissioner,* 92 T.C. 16 (1989), the Court found that the estate had not substantially complied with the regulations under section 2032A in attempting to value the property. In *Estate of Merwin v. Commissioner, supra,* neither a notice of election nor a recapture agreement was attached to the original return and a recapture agreement was not filed within the 90-day notice received from the agent. No reference was made to the fair market value of the property involved and various other items of required information were not provided. These cases are all distinguishable from the case before us and are not controlling.

After reviewing the legislative history of section 2032A and section 1421 of the Tax Reform Act of 1986, it is clear that they were enacted to provide relief for the taxpayers who failed to specifically meet all the requirements for electing special use value with the filing of the estate tax return. We therefore think the statutes and regulations pertaining thereto should be interpreted and applied in a manner that will accomplish that objective without opening the door to abuses of the law. This is particularly true in cases like this one where it is not entirely clear what the law requires. In this case there certainly could have been some uncertainty as to whether the individual trust beneficiaries had a present interest in the property such as to require their signatures on the election and recapture agreements filed with the return.

The land here involved had been used for years as farmland by decedent and his family, and we assume that it will continue to be so used; otherwise the additional estate tax may be imposed. All of the persons in being who have an interest in the land have now joined in the election and recapture agreement and we assume are bound thereby. The amended return was filed within a reasonable time after the original return was filed and it is unlikely that respondent

has suffered any loss simply because of that timing. Furthermore, the Government fisc is protected by the agreement now on file and the lien imposed on the ranch.

We conclude that the election of special use valuation and the recapture agreement signed by all interested parties were valid and that petitioner is entitled to use the special use valuation in computing the estate tax due.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

CHABOT, CLAPP, SWIFT, JACOBS, WRIGHT, PARR, WELLS, RUWE, and COLVIN, *JJ.,* agree with the majority.

———

COLVIN, *J.,* concurring: I believe the result reached by the majority is entirely consistent with section 2032A(d)(3) and applicable legislative history. I also agree with the majority that petitioner prevails under section 2032A(d)(3) even if we do not reach the question of which persons had interests necessitating signatures on the recapture agreement.

When the estate tax return and election for special use valuation under section 2032A was filed, it included a recapture agreement signed by "Jocelyn McAlpine Greeman, Trustee." It was not signed by the three trust beneficiaries, Mrs. Greeman's three children (decedent's grandchildren), then ages 9, 20, and 22. Respondent notified the estate that he viewed the election as invalid. Less than 90 days thereafter, the estate supplied an amended agreement with the additional signatures. Respondent admits that the only grounds for invalidating the special use valuation election is the omission of the grandchildren's signatures from the election originally filed. Under a plain reading of the statute and applicable legislative history, petitioner properly perfected the election for special use valuation under section 2032A.

An executor may elect to value real property used for farming or for closely held business use on the basis of the property's actual use, rather than on its highest or best use, if numerous requirements are met. Sec. 2032A(a).

Section 2032A(d)(1), enacted in 1981 (Pub. L. 97-34, sec. 421(j)(3), 95 Stat. 313), directs the Secretary to prescribe regulations to establish the manner in which the election is to be made. Section 2032A(d)(3), enacted in 1984 (Pub. L. 98-369, sec. 1025(a), 98 Stat. 494, 1030), further directs the Secretary to prescribe procedures that where there has been an election that substantially complies with the regulations promulgated by the Secretary, the executor will have a reasonable period of time to perfect the election (not exceeding 90 days after notification of the need to perfect the election). Perfection of an election is allowed even if the notice of election, as filed, does not contain all required information, sec. 2032A(d)(3)(B)(i); or if the signatures of one or more persons required to enter into the agreement are not included on the agreement as filed, or the agreement does not contain all required information, sec. 2032A(d)(3)(B)(ii).

Thus, section 2032A(d)(3) makes two things clear:

1. The Secretary was instructed by Congress to prescribe procedures permitting the executor to supply certain information up to 90 days after being notified of the need to do so.

2. One item expressly allowed to be supplied late was the "signatures of 1 or more persons required to enter into the agreement." Sec. 2032A(d)(3)(B)(ii).

The mandate to promulgate these procedures was enacted in 1984. Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 1025(a). To date these regulations have not been issued, which prevents the petitioner here from pointing to prescribed procedures for supplying signatures after filing the election. However, it would be bizarre to hold that the Treasury Department's failure to comply with the Congress' mandate somehow bars petitioner from claiming the relief provided by the statute.

*Legislative History*

Section 2032A(d)(3) originated as a Senate amendment to the Deficit Reduction Act of 1984, Pub. L. 98-369. During Senate floor debate on the amendment, the sponsor of the amendment (Senator Dixon) presented the following example:

In one case, the IRS has taken the position that an attempt to elect section 2032A treatment was invalid, even though timely filed, because the mother signed for her minor children without first having gone to court to be appointed as guardian for her own children. When this error was pointed out, the woman went to an Illinois judge, who promptly granted the guardianship and made its application retroactive. However, the Service would not permit the election to be perfected. Now, I will not take the time of the Senate to argue whether the woman acted correctly. The point is that she acted in good faith and that even if she was in error, she should have been allowed to correct it. [Cong. Rec. S4318 (daily ed. Apr. 11, 1984).]

The conference report accompanying enactment of section after of 2032A(d)(3) states that:

The Senate amendment directs the Treasury Department to develop procedures permitting perfection of notices within 90 days of a request from the Internal Revenue Service. * * * [H. Rept. 98-861 (Conf.), at 1240 (1984), 1984-3 C.B. (Vol. 2) 494.]

The conference report continues:

The conference agreement follows the Senate amendment. The conferees wish to reiterate that, as under the Senate amendment, perfection of notices of election and of agreements to current use valuation elections is to be permitted only in cases where the estate tax return, as filed, evidences substantial compliance with the requirements of the Treasury regulations. For example, merely checking the applicable box on the Federal estate tax return that an election is being made is not sufficient action by the estate to secure the benefits of the current use valuation provision. Both a notice of election and an agreement that themselves evidence substantial compliance with the requirements of the regulations must be included with the estate tax return, as filed, if the estate is to be permitted to perfect its election. [H. Rept. 98-861 (Conf.), at 1240-1241 (1984), 1984-3 C.B. (Vol. 2) 494-495.]

The conference report requires that both a notice of election and an agreement that themselves evidence substantial compliance be included with the estate tax return as filed. Question may arise under this language whether signatures that are not on the original agreement that is filed with the return can be added. However, there should be no basis for doubt since the statute specifically states that the executor may provide "signatures of one or more persons required to enter into the agreement" within a reasonable period of time after notification of the need to do so. Sec. 2032A(d)(3)(B)(ii).

The conference report also states the following:

To be eligible for perfection, the agreement as originally filed must at a minimum be valid under State law and must include the signatures of all parties having a present interest or a remainder interest other than an interest having a relatively small value.[1] The right to perfect agreements is intended to be limited to cases where, for example, a parent of a minor remainderman, rather than a *guardian ad litem* as required under State law, signs the agreement. * * *

[1]The conferees are aware that the current use valuation provision requires that, when successive interests or concurrent interests are created in specially valued property, all parties with any interest in the property must be qualified heirs and all such parties must enter into the agreement to the election, regardless of the relative values of their interests. The de minimis rule established in this provision is intended to apply solely as a guideline in determining whether perfection of an agreement is to be permitted. The guideline is not intended to give rise to an inference that parties having an interest in specially valued property which has a relatively small value are not required to enter into the agreement or that such persons need not be qualified heirs.

[H. Rept. 98-861 (Conf.), at 1241 (1984), 1984-3 C.B. (Vol. 2) 495.]

The dissenting opinion relies on this report language. The dissenting opinion somehow concludes that the report language does not permit what the statute clearly does permit. I submit that the report language clearly illustrates that a reasonable error in who should sign the document—in the instant case, the legal titleholder rather than the holders of beneficial interests—is the sort of error that may be corrected. Thus, the report language confirms the applicability of the statute to the facts of the instant case.

I conclude from the foregoing that the statute makes crystal clear that, under circumstances such as in this case, signatures may be provided after the original election is filed, and that petitioner has properly done so here. Accordingly, I agree with the majority's holding for petitioner.

DRENNEN, CHABOT, KÖRNER, SWIFT, JACOBS, WRIGHT, PARR, WELLS, RUWE, and WHALEN, *JJ.*, agree with this concurring opinion.

---

NIMS, *C.J.*, dissenting: In concluding that the statute would allow petitioner to supply any necessary signatures omitted from the original recapture agreement, the majority

first sidesteps an important issue unrelated to section 2032A(d)(3) and then disregards both legislative history and relevant precedent when applying that section. The issue the majority expressly avoids is whether, without regard to the statutory relief provisions, the trust beneficiaries were justified in not executing the original recapture agreement. This issue is important because a proper application of section 2032A(d)(3) does not support a holding for petitioner.

*Signature Requirement for Trust Beneficiaries*

Section 2032A(d)(2) describes the recapture agreement in part as "a written agreement signed by each person in being who has an interest (whether or not in possession) in any property designated in such agreement." Petitioner argues at length on brief that only the trustee, Mrs. Greeman, had an interest in the property under State law, and thus only she was required to sign the recapture agreement. Petitioner's primary contention is that the beneficiaries' interests do not satisfy section 20.2032A-8(c)(2), Estate Tax Regs., particularly the first sentence: "An interest in property is an interest which, as of the date of the decedent's death, can be asserted under applicable local law so as to affect the disposition of the specially valued property by the estate."

Assuming that the beneficiaries here are qualified heirs, a proposition discussed in detail below, petitioner's reliance on section 20.2032A-8(c)(2), Estate Tax Regs., appears to be misplaced. There can be little doubt that qualified heirs with present interests are considered to have interests in the property under section 2032A(d)(2). See *Estate of Thompson v. Commissioner,* 864 F.2d 1128, 1136 n. 10 (4th Cir. 1989), revg. 89 T.C. 619 (1987); H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 735, 761. The legislative history does not suggest otherwise, and the statute itself, in section 2032A(e)(1), defines "qualified heir" in a way that presumes an interest in the property. I do not believe that section 20.2032A-8(c)(2), Estate Tax Regs., was meant to, or can be reasonably read to, override the principle that qualified heirs have interests in the property. See *Estate of Pullin v. Commissioner,* 84 T.C. 789, 802 (1985) (Dawson, C.J.,

dissenting). Indeed, this regulation in context appears to be broadening rather than limiting. See sec. 20.2032A-8(c)(1), Estate Tax Regs.; Rev. Proc. 81-14, secs. 2.04 and 3, 1981-1 C.B. 669. Still to be confirmed is the assumption that the beneficiaries are qualified heirs.

A qualified heir, as defined in section 2032A(e)(1), must be a member of the decedent's family specified in section 2032A(e)(2). Respondent does not dispute that the three beneficiaries, decedent's grandchildren, fall within the permissible family relationships of section 2032A(e)(2). The relevant inquiry, however, is whether the beneficiaries are qualified heirs for purposes of section 2032A(b)(1), which restricts the special use valuation provisions to real property that is "acquired from or passed from the decedent to a qualified heir of the decedent." See sec. 2032A(e)(1). The way in which the treatment of trusts evolved under section 2032A serves to answer this question.

Interests held through a trust have been eligible for special use valuation since the enactment of section 2032A in 1976:

> The conferees intend to make it clear that the rules for special valuation apply to property which passes in trust. Trust property shall be deemed to have passed from the decedent to a qualified heir to the extent that the qualified heir has a present interest in that trust property. [S. Rept. 94-1236 (Conf.) (1976), 1976-3 C.B. (Vol. 3) 807, 960.]

See *Estate of Clinard v. Commissioner*, 86 T.C. 1180 (1986). "Present interest" was subsequently defined in the regulations with reference to section 2503. T.D. 7710, 45 Fed. Reg. 50,736 (July 31, 1980), 1980-2 C.B. 254, 259, 264 (secs. 20.2032A-3(b)(1) and 20.2032A-8(a)(2), Estate Tax Regs.).

This section 2503 definition, in the view of Congress, unjustifiably precluded special use valuation for property passing from the decedent to a trust in which the interests of all the beneficiaries were subject to the trustee's discretion. H. Rept. 97-215 (Conf.) (1981), 1981-2 C.B. 481, 510; H. Rept. 97-201 (1981), 1981-2 C.B. 352, 380 n.8. Accordingly, Congress in 1981 amended section 2032A(g) to permit special use valuation for discretionary trusts in which all the beneficiaries are family members under section 2032A(e)(2), by deeming such beneficiaries to have present interests. Economic Recovery Tax Act of 1981, Pub. L.

154

97-34, sec. 421(j)(1), 95 Stat. 312; see H. Rept. 97-215 (Conf.) (1981), 1981-2 C.B. at 510. (References to section 2503 were deleted from the regulations in 1981 because "It has been concluded that the present interest requirement should not apply if all the potential beneficiaries and remaindermen of a discretionary trust are members of the decedent's family and, therefore, would have been qualified heirs if the property passed to them directly." T.D. 7786, 46 Fed. Reg. 43,036 (Aug. 26, 1981), 1981-2 C.B. 174.)

The three trusts involved here are discretionary trusts covered by section 2032A(g), as petitioner concedes and as is apparent from section V(b) of decedent's will:

(b) *Distributions.* The Trustee shall pay to or for the benefit of each beneficiary as much as [sic] the net income of such beneficiary's share or trust as the Trustee, in its sole discretion, shall deem necessary or advisable for the health, maintenance, support and education of such beneficiary. The Trustee may, in its sole discretion, at any time and from time to time expend so much of the corpus of each trust estate created herein as it may deem advisable to provide adequately and properly for any emergency or extraordinary expense of the beneficiary thereof, including but not limited to expenses incurred by reason of illness, disability and education. Distribution of the entire principal of a share or trust is authorized if the Trustee shall determine such distribution shall be to the best interest of the beneficiary thereof in accordance with the foregoing standard. The Trustee, in the exercise of its discretion hereunder, shall take into consideration other means of support or maintenance available to each beneficiary hereunder prior to making distributions of income or corpus to said beneficiary or on his or her behalf.

The three beneficiaries, deemed to have present interests under section 2032A(g), are qualified heirs within the meaning of section 2032A(b)(1) and (e)(1). See S. Rept. 94-1236 (Conf.) (1976), 1976-3 C.B. (Vol. 3) at 960. As qualified heirs, the beneficiaries have interests in the property within the meaning of section 2032A(d)(2), a status that seemingly requires their signatures on the recapture agreement.

The wording of section 2032A(d)(2), however, suggests another possible justification for the omitted beneficiary signatures, apart from petitioner's no-interest-in-the-property argument. Section 2032A(d)(2) states that a recapture agreement is signed by each person in being with an interest in the property "consenting to the application of

subsection (c) with respect to such property," implying that binding consent (rather than signatures per se) may determine compliance with that section. In this case, the question is whether the recapture agreement as executed by the trustee served to bind the beneficiaries, thus rendering their signatures unnecessary. Because the statute calls for consent to the application of section 2032A(c), the provisions thereof are the appropriate focus.

One such provision, section 2032A(c)(5), describes a consequence of a recapture-triggering event as follows: "The qualified heir shall be personally liable for the additional tax imposed by this subsection with respect to his interest." In a typical situation not involving a trust, the signatures of the qualified heirs are important because without those signatures it is doubtful that the qualified heirs bear personal liability for the subsequent additional tax. *McDonald v. Commissioner,* 89 T.C. 293, 305 (1987), affd. on sec. 2032A issue 853 F.2d 1494 (8th Cir. 1988); *Estate of Gunland v. Commissioner,* 88 T.C. 1453, 1457 (1987); sec. 20.2032A-8(c)(1), Estate Tax Regs. ("The agreement is to be in a form that is binding on all parties having an interest in the property."). In this case, whether Mrs. Greeman succeeded in binding the beneficiaries under section 2032A(d)(2) appears to depend specifically on whether she managed to bind them personally for potential recapture liability.

In the first sentence of the original recapture agreement, Mrs. Greeman introduced herself as trustee for the "trusts of the qualified heirs" and as an "other party having interest in the property." She signed the agreement once as trustee under the heading "Qualified Heirs" and once in her individual capacity under the heading "Other Interested Parties." The body of the agreement includes this statement concerning personal liability:

More specifically, the undersigned, trustee for the qualified heirs expressly agrees and consents to personal liability under subsection (c) of 2032A for the additional tax imposed by that subsection with respect to their respective interests in the above-described property in the event of certain early dispositions of the property or early cessation of the qualified use of the property. * * *

Because of the reference to "their respective interests," Mrs. Greeman in executing the agreement may have in-

tended to bind the beneficiaries personally for recapture liability. If this was her intention, however, the intention does not comport with the apparent effect.

(In considering the effect of the original recapture agreement, I initially take a general approach, without reference to specific local law, because of the unclear conflict-of-laws situation in this case. The decedent resided and died in Texas, the trustee and beneficiaries reside in New Mexico, the trustee executed the original recapture agreement in an unspecified location, and the trust property is located in Colorado.)

The well-settled general rule is that trust beneficiaries are not personally subject to liabilities to third persons incurred in the administration of the trust. See 2 Restatement, Trusts 2d, sec. 274 (1959). The recapture agreement is in the nature of a contract. A specific corollary to the general rule is that trust beneficiaries are not personally liable upon contracts made by a trustee in the administration of the trust. See 3A A. Scott & W. Fratcher, The Law of Trusts, sec. 275, p. 522 (4th ed. 1988); 2 Restatement, Trusts 2d, sec. 275 (1959). A trustee has no power to subject beneficiaries to personal liability because a trustee is not an agent. *Taylor v. Davis,* 110 U.S. 330, 334-335 (1884); *Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 103 (2d Cir. 1985). See G. Bogert, The Law of Trusts and Trustees, sec. 712, p. 265 (rev. 2d ed. 1982); 1 Restatement, Agency 2d, sec. 14B (1958).

Nonetheless, if someone is not merely a trustee but is also an agent for the beneficiaries, she can bind the beneficiaries personally upon contracts properly made in the performance of her duties. See 3A A. Scott & W. Fratcher, The Law of Trusts, sec. 275, p. 523 (4th ed. 1988); 2 Restatement, Trusts 2d, sec. 275, comment e (1959); 1 Restatement, Agency 2d, sec. 14B, comment g (1958). Control of the trustee by the beneficiaries, however, is necessary for such a relationship. *Western Electric Co. v. New Mexico Bureau of Revenue,* 90 N.M. 164, 561 P. 2d 26, 29 (1976). See 2 Restatement, Trusts 2d, sec. 274, comment b (1959); 1 Restatement, Agency 2d, sec. 14 & comment a, sec. 14B & comments a-f (1958). (Because both the trustee and the beneficiaries here are New Mexico residents, presumably the

law of that State determines the existence of an agency.) The presence of an agency relationship must be determined from all the facts and circumstances, including the conduct and communications of the parties. *Trans Union Leasing Corp. v. Hamilton,* 93 N.M. 310, 600 P. 2d 256, 258 (1979).

Given the discretion accorded Mrs. Greeman as trustee under the terms of decedent's will, this record does not suggest an ongoing principal/agent relationship between her and the beneficiaries. Moreover, the record does not include "conduct and communications" facts that would support the presence of a more limited agency at the time Mrs. Greeman executed the original recapture agreement. See 1 Restatement, Agency 2d, sec. 26 & comments a-c (1958).

Granted, the agency doctrine of ratification permits the later adoption or confirmation of an unauthorized act, which amounts to a substitute for prior authority. *Grandi v. LeSage,* 74 N.M. 799, 399 P. 2d 285, 292 (1965). Further, liabilities associated with ratification normally relate back to the time of the original act. See 1 Restatement, Agency 2d, secs. 82 & 100A (1958). Although in this case the beneficiaries arguably ratified the trustee's original unauthorized act, any purported ratification should be irrelevant. At the time petitioner filed the recapture agreement, the beneficiaries were not clearly subject to the personal liability demanded by section 2032A(c)(5). The relation-back feature of ratification does not compensate for the Commissioner's state of limbo as to personal liability during the period before a purported ratification.

The foregoing analysis establishes that decedent's grandchildren, the trust beneficiaries, had interests in the property within the meaning of section 2032A(d)(2) and that they were not personally bound by the original recapture agreement. That recapture agreement, therefore, did not satisfy section 2032A(d)(2).

*Section 2032A(d)(3)*

Section 2032A(d)(3) provides for less than strict compliance with the applicable regulations:

(3) MODIFICATION OF ELECTION AND AGREEMENT TO BE PERMITTED.—
The Secretary shall prescribe procedures which provide that in any case
in which—

(A) the executor makes an election under paragraph (1) within the time prescribed for filing such election, and

(B) substantially complies with the regulations prescribed by the Secretary with respect to such election, but—

(i) the notice of election, as filed, does not contain all required information, or

(ii) signatures of 1 or more persons required to enter into the [recapture] agreement * * * are not included on the agreement as filed, or the agreement does not contain all required information,

the executor will have a reasonable period of time (not exceeding 90 days) after notification of such failures to provide such information or agreements.

The majority states that "subparagraph (B)(ii) of section 2032A(d)(3) does mention signatures and would appear to specifically give relief under circumstances such as here present." Admittedly, at first glance this provision appears to benefit petitioner. What the majority disregards, however, is that the recapture agreement must demonstrate substantial compliance with the applicable regulations in order for petitioner to qualify for relief under section 2032A(d)(3). H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 495; *Prussner v. United States*, 896 F.2d 218, 223 (7th Cir. 1990); *McDonald v. Commissioner*, 853 F.2d 1494, 1498 n. 7 (8th Cir. 1988), affg. on this issue 89 T.C. 293 (1987).

Although the existence of the substantial compliance standard is apparent from the face of the statute, the statute does not define the standard. Consequently, resort to the legislative history is appropriate. *McDonald v. Commissioner*, 853 F.2d at 1498; *Estate of Doherty v. Commissioner*, 95 T.C. 446, 455-456 (1990). The legislative history emphasizes that not all signature omissions are insignificant enough to be curable under section 2032A(d)(3):

an agreement to the current use valuation election may be perfected under this provision provided the agreement, as filed with the estate tax return, evidences substantial compliance with the requirements of the regulations. To be eligible for perfection, the agreement as originally filed must at a minimum be valid under State law and *must include the signatures of all parties having a present interest or a remainder interest other than an interest having a relatively small value.* [Emphasis added.] The right to perfect agreements is intended to be limited to cases where, for example, a parent of a minor remainderman, rather than a *guardian ad litem* as required under State law, signs the agreement. * * * [H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 495. Fn. ref. omitted.]

In light of this legislative intent, I fail to see how the majority can reach the result it does under section 2032A(d)(3). All three beneficiaries have present interests in the property according to section 2032A(g), and none of those interests is of "relatively small value."

The majority does not explain why it ignores the legislative history of section 2032A(d)(3), which has been cited with approval by this Court several times. E.g., *Estate of Strickland v. Commissioner*, 92 T.C. 16, 29 (1989); *McDonald v. Commissioner*, 89 T.C. 293, 306-307 (1987), affd. on this issue 853 F.2d 1494 (8th Cir. 1988); *Estate of Johnson v. Commissioner*, 89 T.C. 127, 132-133 (1987); *Estate of Grimes v. Commissioner*, T.C. Memo. 1988-576; *Estate of Killion v. Commissioner*, T.C. Memo. 1988-244. Most recently, in *Estate of Doherty v. Commissioner*, *supra* at 456-457, this Court relied on the legislative history in deciding that section 2032A(d)(3) was not available to cure an attempted election lacking a written appraisal of the specially valued property.

The majority distinguishes *McDonald v. Commissioner*, *supra*, based on the Eighth Circuit's statement that "it is difficult to conclude that the original election was in substantial compliance * * * when it contained neither the name nor the signature of anyone with an interest in the property." 853 F.2d at 1497. The majority reasons that the original documents here contain the names of all interested parties and only lack certain signatures. This is not a meaningful distinction. The purpose of the section 2032A(d)(2) signature requirement is to ensure that interested parties consent to the recapture provisions, not to place respondent on notice as to the interested parties. See sec. 20.2032A-8(c)(1), Estate Tax Regs. Notice as to the interested parties is provided for elsewhere, namely in Schedule N to the Form 706 and in the notice of election. See sec. 20.2032A-8(a)(3)(xii), Estate Tax Regs.

The quoted passage from the Eighth Circuit opinion is also taken out of context. It arises in a brief discussion of the statutory language, which is merely the starting point in the Eighth Circuit's systematic analysis. The court discusses the legislative history approvingly, and in more

detail than it discusses the statute, beginning in the next paragraph. 853 F.2d at 1497-1498.

*Section 1421 of the Tax Reform Act of 1986*

The majority does not make clear the extent to which its holding for petitioner draws support from section 1421 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2716 (as amended, hereinafter referred to as section 1421). Because I believe that both section 2032A(d)(2) and section 2032A(d)(3) favor respondent in this case, section 1421 warrants at least some discussion as a possible independent ground for the majority's result:

SEC. 1421(a). IN GENERAL.—In the case of any decedent dying before January 1, 1986, if the executor—

(1) made an election under section 2032A of the Internal Revenue Code of 1954 on the return of tax imposed by section 2001 of such Code, and

(2) provided substantially all the information with respect to such election required on such return of tax,

such election shall be a valid election for purposes of section 2032A of such Code.

(b) EXECUTOR MUST PROVIDE INFORMATION.—An election described in subsection (a) shall not be valid if the Secretary of the Treasury or his delegate after the date of enactment of this Act requests information from the executor with respect to such election and the executor does not provide such information within 90 days of receipt of such request.

This Court has considered section 1421 twice recently, in *Estate of Merwin v. Commissioner,* 95 T.C. 168 (1990), and in *Estate of Doherty v. Commissioner,* 95 T.C. 446 (1990). In both cases, which involved estates that failed to qualify for relief under section 2032A(d)(3), we declined to grant section 1421 relief because the cause of the deficient election was not a Form 706 misleading on its face. See *Estate of Doherty v. Commissioner, supra* at 458-459. Clearly, whatever the reason for the omitted signatures in the instant case, that reason was not a misleading Form 706. Petitioner should not be allowed to perfect its election under the authority of section 1421.

Based on the foregoing, I cannot join with the majority in holding for petitioner. Although the majority declines to address whether the original recapture agreement fully

satisfied the election requirements, I conclude that, because of the omitted beneficiary signatures, it did not. I also conclude that petitioner fails to qualify for relief under either section 2032A(d)(3) or section 1421. The majority, in my judgment, strays unjustifiably from both relevant precedent and applicable legislative history.

PARKER, HAMBLEN, COHEN, GERBER, and HALPERN, *JJ.*, agree with the dissenting opinion.