# United States Tax Court

162 T.C. No. 10

SN WORTHINGTON HOLDINGS LLC f.k.a. JACOBS WEST ST. CLAIR ACQUISITION LLC, MM WORTHINGTON INC., TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 13248-20.                           Filed May 22, 2024.

————————

W filed a partnership return for 2016. Absent any election, W would be subject to the TEFRA partnership audit and litigation procedures. When R began the examination of W's return, W elected into the partnership audit and litigation procedures enacted by the Bipartisan Budget Act of 2015 (BBA), Pub. L. No. 114-74, 129 Stat. 584. In so electing, W represented that it had sufficient assets to pay a potential imputed underpayment. R determined that the election was invalid because it appeared to R that W did not have sufficient assets.

To elect into the BBA procedures, the regulations require that a partnership, among other things, provide a statement that "[t]he partnership has sufficient assets, and reasonably anticipates having sufficient assets, to pay a potential imputed underpayment with respect to the partnership taxable year." Treas. Reg. § 301.9100-22(b)(2)(ii)(E)(*4*). The regulations do not require the partnership to otherwise establish that it has sufficient assets to pay a potential imputed underpayment.

*Held*: When a taxpayer complies with all of the requirements to make a regulatory election, the election is valid.

*Held, further*, if a partnership validly elects into the BBA partnership procedures, R must follow those procedures.

*Held, further*, a notice of final partnership administrative adjustment issued pursuant to the repealed TEFRA procedures with respect to a partnership that is subject to the BBA procedures is invalid.

*Held, further*, the notice of final partnership administrative adjustment issued pursuant to the repealed TEFRA procedures with respect to W's 2016 return is invalid.

*Held, further*, R failed to establish that equitable estoppel precludes W from asserting that the BBA procedures apply.

————

*Michelle A. Levin*, *Sidney W. Jackson IV*, and *Logan C. Abernathy*, for petitioner.

*Joseph E. Nagy*, *Anita A. Gill*, *Mark J. Miller*, and *William M. Rowe*, for respondent.

OPINION

BUCH, *Judge*: This is a TEFRA[1] partnership-level proceeding brought under section 6226(a)[2] as enacted by TEFRA. The Petition was filed in response to the Commissioner's issuance of a Notice of Final

---

[1] Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71.

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code or I.R.C.), in effect at all relevant times, and regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times.

Partnership Administrative Adjustment (FPAA) with respect to SN Worthington Holdings, LLC (SN Worthington), an Ohio limited liability company. In 2018, the Commissioner notified SN Worthington that he had selected its partnership return for 2016 (year in issue) for examination. In response, SN Worthington submitted to the Commissioner an election to be subject to the BBA[3] partnership procedures for the year in issue. The Commissioner nonetheless proceeded under the TEFRA procedures. The Commissioner later issued an FPAA with respect to SN Worthington from which MM Worthington, Inc. (petitioner), filed the Petition as the tax matters partner (TMP).

Pending before the Court is petitioner's Motion to Dismiss for Lack of Jurisdiction. Petitioner asserts that the Commissioner's FPAA is invalid because SN Worthington elected into the BBA procedures. The Commissioner disagrees, arguing that SN Worthington's election was invalid, or alternatively, that petitioner should be equitably estopped from arguing that the election was valid.

To elect into the BBA procedures for years before 2018, a partnership must submit to the Commissioner an election under Treasury Regulation § 301.9100-22(b)(2) that satisfies the requirements set forth in that regulation. Because SN Worthington complied with the plain text of the regulation, it made a valid election into the BBA procedures. As a result, the TEFRA procedures are inapplicable, and the Commissioner's FPAA is invalid. Further, petitioner is not equitably estopped from arguing that the BBA procedures apply to this case. For equitable estoppel to apply, all five traditional elements of the doctrine must be satisfied. The Commissioner failed to establish that at least two of those elements are satisfied, and thus equitable estoppel does not apply.

*Background*

SN Worthington is a limited liability company organized under Ohio law and classified as a partnership for federal income tax purposes.

---

[3] Bipartisan Budget Act of 2015 (BBA), Pub. L. No. 114-74, § 1101(a), (g), 129 Stat. 584, 625, 638. Because the BBA amended the Code by striking the TEFRA provisions and enacting new provisions using many of the same Code section numbers, when referring to such Code sections, we will parenthetically indicate to which procedures, BBA or TEFRA, we are referring, where the context may not otherwise be clear.

When the Petition was filed, SN Worthington's mailing address and principal place of business were both in Michigan.

In 2017, SN Worthington filed Form 1065, U.S. Return of Partnership Income, for the year in issue. In October 2018, the Commissioner sent Letter 2205–D to SN Worthington, notifying it that the Commissioner had selected its 2016 partnership return for examination. The letter also informed SN Worthington that it could elect into the BBA partnership audit procedures. The letter instructed that, to do so, the partnership had to make an election within 30 days from the date of the letter. *See* Treas. Reg. § 301.9100-22(b)(1).

Within 30 days of that letter, SN Worthington submitted to the Commissioner a completed Form 7036, Election under Section 1101(g)(4) of the Bipartisan Budget Act of 2015, signed under penalties of perjury. To complete Form 7036, SN Worthington had to make certain representations. One of those representations was that it "[h]as sufficient assets, and reasonably anticipates having sufficient assets, to pay the potential imputed underpayment that may be determined during the partnership examination." *See* Treas. Reg. § 301.9100-22(b)(2)(ii)(E)(*4*). Soon after receiving the election, the Commissioner sent a letter to petitioner stating:

> As part of the election, you represented the partnership has sufficient assets, and reasonably anticipates having sufficient assets, to pay the potential imputed underpayment that may be determined during the partnership examination. After reviewing the tax return it appears that you do not meet the requirements.

The Commissioner had determined that SN Worthington would not be able to pay an imputed underpayment. The letter went on to state that, if SN Worthington disagreed with the Commissioner's determination, it could submit supporting documents to the Commissioner within 30 days. SN Worthington did not respond. Consequently, the Commissioner sent a second letter to petitioner, notifying it that the Commissioner had determined that the election was invalid because "[p]roof of sufficient available assets to pay the potential imputed tax liability was never provided" and "[t]he election was not signed by the Tax Matters Partner or an individual authorized to sign the partnership

return for the taxable year under examination."[4] SN Worthington did not respond to the second letter. Although SN Worthington did not to respond to the letters, it had subsequent communications with the Commissioner and signed documents referencing the TEFRA procedures.

On June 2, 2020, SN Worthington raised with the Commissioner its view that the examination was being conducted under the wrong procedures. Its representative sent a fax to the Commissioner requesting to be a part of the Small Business/Self-Employed Fast Track Settlement program. But most of that letter addressed SN Worthington's position that the examination of its 2016 return should not have been occurring under TEFRA procedures because it had elected into the BBA procedures. The letter addressed both rationales the Commissioner had provided in rejecting SN Worthington's election, concluding that "there is no requirement that a taxpayer provide proof of sufficient assets to pay an imputed tax liability and the Election was signed by the individual who, in fact, signed the Taxpayer's partnership return for the taxable year under examination."

The Commissioner denied the fast-track settlement request without addressing SN Worthington's argument that its 2016 return was being examined under the wrong procedures.

On August 24, 2020, the Commissioner issued an FPAA to petitioner, determining adjustments to SN Worthington's 2016 return. Petitioner filed a timely Petition challenging the Commissioner's determinations. On August 4, 2023, petitioner filed a Motion to Dismiss and Declare Final Partnership Administrative Adjustment Invalid, arguing that the Court lacks jurisdiction to hear this case because the FPAA issued to SN Worthington is invalid. The Commissioner objects.

*Discussion*

"Jurisdiction is a fundamental question that this Court must address before it may decide a case." *Green Gas Del. Statutory Tr. v. Commissioner,* T.C. Memo. 2015-168, at \*7 (footnote omitted) (citing *Stewart v. Commissioner*, 127 T.C. 109, 112 (2006)). This Court generally has jurisdiction over a TEFRA partnership case if (1) a valid FPAA was issued by the Commissioner and (2) a petition was timely

---

[4] The Commissioner no longer challenges whether the person signing the form was authorized to sign the election. *See infra* note 6.

filed with this Court by a proper party. *Wise Guys Holdings, LLC v. Commissioner*, 140 T.C. 193, 196 (2013).

Before the Court is petitioner's Motion to Dismiss in which petitioner challenges the validity of the Commissioner's FPAA, and thus our jurisdiction to hear this case. *See Green Gas Del. Statutory Tr.*, T.C. Memo. 2015-168, at *7. But to determine the validity of the FPAA, we must address two preliminary questions. First, we must decide whether SN Worthington properly elected into the BBA procedures for the year in issue, thereby making TEFRA procedures inapplicable. If we conclude that SN Worthington's election is proper, then we must determine whether petitioner should be equitably estopped from arguing that the BBA procedures apply.

I.       *Background on Partnership Audit Procedures*

In 1982, Congress enacted TEFRA, which significantly changed the procedures by which the Commissioner determined deficiencies relating to certain partnerships. Before TEFRA, the Commissioner made adjustments to items that flowed from a partnership at the partner level. TEFRA established unified audit and litigation procedures through which the Commissioner could make adjustments at the partnership level. Specifically, section 6221 (TEFRA) provided that "the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level." Under the TEFRA procedures, adjustments were determined at the partnership level, but the assessment and collection of tax attributable to partnership items occurred at the partner level. *See* I.R.C. §§ 6221, 6230(a)(2), 6231(a)(6) (TEFRA). The TEFRA procedures were replaced in 2015 with the enactment of the BBA procedures. *See generally* BBA § 1101, 129 Stat. at 625.

The BBA established a new framework for auditing, adjusting, assessing, and collecting tax from partnerships. The BBA procedures streamlined the audit process for partnerships by allowing audits, adjustments, *and payments* to all occur at the partnership level. I.R.C. § 6221(a) (BBA). Although enacted in 2015, the BBA procedures included a delayed effective date, generally applying to partnership

returns for tax years beginning after December 31, 2017.[5] *See* BBA § 1101(g)(1), 129 Stat. at 638. Thus, under the default rules, any return with a tax year beginning before January 1, 2018, remains subject to TEFRA. *Id.*

Although enacted with a delayed effective date, the BBA specifically authorized partnerships to elect into the BBA procedures for partnership tax years beginning after November 2, 2015, and before January 1, 2018. *See* BBA § 1101(g)(4), 129 Stat. at 638.

II.     *Making an Early Election into the BBA Procedures*

Section 1101(g)(4) of the BBA gives partnerships the right to elect, in the form and manner prescribed by the Secretary, into the BBA procedures for years beginning after the BBA's enactment and before 2018. The Secretary promulgated a regulation setting forth the form and manner for making such an election. *See* Treas. Reg. § 301.9100-22. Treasury Regulation § 301.9100-22(a) provides:

> Pursuant to section 1101(g)(4) of the Bipartisan Budget Act of 2015, Public Law 114-74 (BBA), a partnership may elect at the time and in such form and manner as described in this section for amendments made by section 1101 of the BBA . . . to apply to any return of the partnership filed for an eligible taxable year as defined in paragraph (d) of this section. An election is valid only if made in accordance with this section. Once made, an election may only be revoked with the consent of the Internal Revenue Service (IRS). An election is not valid if it frustrates the purposes of section 1101 of the BBA. A partnership may not request an extension of time under § 301.9100-3 for an election described in this section.

To make an election into the BBA procedures, a partnership must provide a written statement that satisfies the requirements of Treasury Regulation § 301.9100-22(b)(2). Among other things, that regulation requires that the partnership make a series of representations. *Id.* subdiv. (ii)(E). One of those representations is relevant here, the requirement to make a representation that "[t]he partnership has sufficient assets, and reasonably anticipates having sufficient assets, to

---

[5] Partnerships can elect out of the BBA procedures in limited circumstances. *See* I.R.C. § 6221(b) (BBA) (allowing partnership with 100 or fewer partners to elect out of the BBA procedures).

pay a potential imputed underpayment with respect to the partnership taxable year that may be determined under subchapter C of chapter 63 of the Internal Revenue Code as amended by the BBA." *See id.* subdiv. (ii)(E)(*4*).[6]

The parties disagree as to whether SN Worthington satisfied the requirement of Treasury Regulation § 301.9100-22(b)(2)(ii)(E)(*4*). The core of the dispute centers on what is required to make the election.

Petitioner argues that it was sufficient to make the representation that SN Worthington had enough assets to pay a potential imputed underpayment. Petitioner argues that SN Worthington's election is valid because the election complied with the plain text of the regulation. Specifically, the election complied with the time, form, and manner requirements prescribed in the Treasury regulation. Petitioner contends that the Commissioner did not have the authority to request additional information from SN Worthington that was not stated in or required by the regulation and, therefore, SN Worthington's failure to provide the additional information does not make the election invalid. Alternatively, petitioner argues that the election is valid because, even if the Commissioner had the authority to request additional information, the information already provided to the Commissioner established that SN Worthington had enough assets to pay the imputed underpayment. Thus, the denial of SN Worthington's election was unreasonable, arbitrary, and capricious.

The Commissioner disagrees, arguing that SN Worthington failed to make a valid election into the BBA procedures for the year in issue. Specifically, he contends that SN Worthington was required to provide the additional requested information showing that it had, and would continue to have, enough assets to pay a potential imputed

---

[6] On the Commissioner's form explaining why he deemed the BBA election to be invalid, two boxes were checked. One indicates that the partnership did not provide proof of sufficient assets to pay the potential imputed underpayment. The other states that the election "was not signed by the Tax Matters Partner or an individual authorized to sign the partnership return for the taxable year under examination." Although the Commissioner identified this as one of the reasons for determining that SN Worthington's election into the BBA was invalid, the Commissioner did not address this issue in response to petitioner's Motion to Dismiss. Therefore, we infer that this issue is no longer in dispute and conclude that SN Worthington's election satisfied this requirement. *See* Treas. Reg. § 301.9100-22(b)(2)(ii) ("The fact that an individual dates and signs the statement making the election described in this paragraph (b) shall be prima facie evidence that the individual is authorized to make the election on behalf of the partnership.").

underpayment. The Commissioner further argues that allowing an election into the BBA procedures when a partnership fails to establish that it had, and would continue to have, sufficient assets to pay a potential imputed underpayment would frustrate the purpose of the BBA procedures. The Commissioner argues that he could deny the election for that reason. Alternatively, the Commissioner argues that petitioner should be equitably estopped from arguing that SN Worthington made a valid election into the BBA procedures "based on its misleading silence and later statements regarding the applicability of TEFRA, to which respondent relied upon to his detriment."

A.      *Whether a Valid Election Was Made*

To determine whether SN Worthington made a valid election, we must decide whether SN Worthington satisfied the requirement to make a representation that it had, and anticipated continuing to have, enough assets to pay a potential imputed underpayment for the year in issue. SN Worthington satisfied this requirement.

Taxpayers make valid elections when they comply with the plain text of the election requirements. The manner for making an election can be set forth in various ways, including by statute or Treasury regulation. But once it is established, the Commissioner may not add ad hoc additional requirements. For example, in *Roy H. Park Broadcasting, Inc. v. Commissioner*, 78 T.C. 1093, 1131–36 (1982), we found an election to treat the sale of certain stock as involuntary conversions valid even though it was made on an amended return. The Commissioner argued that the election had to be made on an original return, even though neither the Code nor the Treasury regulations contained such a requirement. *Id.* at 1132. We disagreed with the Commissioner, stating that "nothing in [the Code], the regulations thereunder, or in its legislative history indicat[ed] that the election [had to] be made on the taxpayer's 'original' return." *Id.* at 1133. Similarly, in *Younger v. Commissioner*, T.C. Memo. 1992-387, 64 T.C.M. (CCH) 90, 91–93, we found valid an election to treat a lump-sum distribution as if it were received when the employee separated from service. The Commissioner argued that the election was invalid because the taxpayer made the election on an original 1987 return instead of an amended 1986 return. *Id.* at 92. We disagreed, finding the election valid even though it was made with the taxpayer's 1987 return because the statutory provision was silent as to the manner for making the election. *Id.* at 92–93. Thus, we concluded that the election could be made on a return for either year. *Id.* at 93.

When determining whether an election is valid, the Commissioner may not require the taxpayer to satisfy more stringent requirements than the provision authorizing the election. For example, in *Estate of McAlpine v. Commissioner*, 96 T.C. 134, 142–43 (1991), *aff'd*, 968 F.2d 459 (5th Cir. 1992), we found a special use valuation election valid, despite its initially having been signed by the wrong person. In *Estate of McAlpine*, property passed on death to trusts for the benefit of the decedent's grandchildren. *Id.* at 136. The election for a special use valuation was signed by the trustee of the trusts, but it was required to have been signed by the ultimate beneficiaries. *Id.* at 141–42. The estate amended its return to provide the corrected signatures. *Id.* at 142–43. The Commissioner denied the election, arguing that it did not contain all the information required by the regulations. *Id.* at 142. We held that the election was valid, even though all requirements were not satisfied until an amended return was filed, because the Code allowed for perfection of the election within a specified time and the signatures were provided on the amended return within that time. *Id.* at 143–44. Thus, the taxpayer had complied with the stated election requirements.

In contrast, we have found elections invalid when they fail to comply with the essential requirements of making the election. In *Estate of Woodbury v. Commissioner*, T.C. Memo. 2014-66, at *12–13, *29, we found an election to pay estate tax in installments over an extended period invalid when the taxpayer failed to attach the election to a timely filed estate tax return where that requirement was contained within the applicable regulation. And in *Greenberg*, we found an election into TEFRA procedures as a small partnership invalid when the partnership did not meet the requirements to be a small partnership and the election was not signed by each partner. *Greenberg v. Commissioner*, T.C. Memo. 2018-74, at *34–38, *aff'd*, 10 F.4th 1136 (11th Cir. 2021), *and aff'd sub nom. Goddard v. Commissioner*, No. 20-73023, 2021 WL 5985581 (9th Cir. Dec. 17, 2021). Further, in *Fratantonio v. Commissioner*, T.C. Memo. 1988-158, we found an election to be taxed as an S corporation invalid when the taxpayer failed to fully and correctly complete the required form to make the election.

Here, SN Worthington's election satisfied the requirement that it represent that it had sufficient assets to satisfy an imputed underpayment. SN Worthington timely submitted a signed Form 7036, which included the following text: "This partnership . . . [h]as sufficient assets, and reasonably anticipates having sufficient assets, to pay the potential imputed underpayment that may be determined during the partnership examination." The form and the wording were designed by

the Commissioner. By submitting a document with this specific text, SN Worthington complied with the plain text of Treasury Regulation § 301.9100-22(b)(2)(ii)(E)(*4*).

The Commissioner argues that "to make a valid election into BBA, all of the requirements in Treas. Reg. § 301.9100-22 must be met (including truthfully representing that the partnership has, and will have, sufficient assets to pay any amounts due) and the election must not frustrate the purposes of section 1101 of the BBA."[7] In substance, he essentially argues that to make a valid election into the BBA procedures, the partnership must establish (and not merely represent) that it has sufficient assets to satisfy an imputed underpayment. For this proposition, the Commissioner cites Treasury Regulation § 301.9100-22(a) and the preamble to Temporary Treasury Regulation § 301.9100-22T. *See* T.D. 9780, 2016-38 I.R.B. 357. The regulation provides: "An election [into the BBA procedures] is not valid if it frustrates the purposes of section 1101 of the BBA." Treas. Reg. § 301.9100-22(a). The regulation does not define or describe the purposes of the BBA or what would frustrate those purposes. The preamble to the temporary regulation perhaps provides some insight. It states: "An election is also not valid if it frustrates the purposes of section 1101 of the BBA, which include the collection of any imputed underpayment that may be due by the partnership under section 6225(a) as amended by the BBA." T.D. 9780, 2016-38 I.R.B. at 358.

But the BBA procedures themselves refute the Commissioner's contention that it would frustrate "the purposes of section 1101 of the BBA for a partnership to elect early into BBA when it does not have sufficient assets to pay an imputed underpayment that may become due." The BBA procedures contemplate the situation in which a

---

[7] No one suggests that SN Worthington purposely made a false representation as to whether it had and would continue to have sufficient assets to satisfy a potential imputed underpayment. To the extent the Commissioner may be concerned that a taxpayer might knowingly make a false representation, the Code provides ample disincentives for doing so. For example, section 7206(1) provides:

> Any person who . . . [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

partnership has insufficient assets to satisfy an imputed underpayment. Under the BBA procedures, if a partnership does not promptly pay an imputed underpayment, the Commissioner can assess and collect from the partners of the partnership their proportionate shares of the imputed underpayment. I.R.C. § 6232(f)(1)(B) (BBA).[8]

Further, when there is doubt to the meaning of a regulation, we interpret the regulation against the drafter. *See United States v. Merriam*, 263 U.S. 179, 187–88 (1923) ("[I]n statutes levying taxes the literal meaning of the words employed is most important[,] for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer."). When we interpret regulations, we presume "the drafter of the regulation . . . said what it means and means what it said." *Sklar, Greenstein & Scheer, P.C. v. Commissioner*, 113 T.C. 135, 143 (1999). And when interpreting a transitional provision with limited applicability, as is the case here, we construe the provision liberally. *See Younger*, 64 T.C.M. (CCH) at 92–93. The Commissioner could have required partnerships to establish that they have enough assets to pay an imputed underpayment. But that is not what the Commissioner has written. Instead, he requires the partnership to make a representation that it has enough assets to pay an imputed underpayment, which is what SN Worthington has represented. *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014) (stating that if the drafter of a law intended a specific meaning, "it easily could have drafted language to the effect").

SN Worthington satisfied the requirement to provide a representation that it had, and anticipated having, sufficient assets to pay a potential imputed underpayment. The Commissioner does not have the authority to create additional hurdles to make the election. Because SN Worthington satisfied all requirements listed in Treasury Regulation § 301.9100-22(b)(2), it made a valid election into the BBA procedures for the year in issue, thus making the TEFRA procedures

---

[8] Section 6232(f) (BBA) authorizes the Commissioner to assess the partners for their proportionate shares of an imputed underpayment if the partnership does not pay it within 10 days of assessment against the partnership. To the extent the Commissioner objects to the additional burden of assessing the partners, this is the precise situation the Commissioner would be in if TEFRA applied to this case, as he suggests.

inapplicable. Accordingly, the FPAA issued to SN Worthington is invalid.[9]

B.    *Whether Equitable Estoppel Applies*

Having concluded that SN Worthington properly elected into the BBA procedures, we must address whether petitioner should be equitably estopped from arguing that the BBA procedures apply. Because the Commissioner did not establish that all of the requirements for equitable estoppel have been met, petitioner is not equitably estopped from arguing that the BBA procedures apply.

1.    *Equitable Estoppel Requirements*

The Commissioner asks us to invoke the doctrine of equitable estoppel against petitioner. For equitable estoppel to apply, the following elements must be satisfied:

> (1) There must be false representation or wrongful misleading silence by the party against whom the estoppel is claimed; (2) the error must originate in a statement of material fact, not in opinion or a statement of law; (3) the party claiming the benefits of estoppel must not know the facts; (4) the party claiming the benefits of the estoppel must have actually, and reasonably, relied on the acts or statement of the party against whom the estoppel is claimed, and (5) as a consequence of that reliance, the party claiming the benefits of the estoppel must be adversely affected by the acts or statements of the party against whom the estoppel is claimed.

*Steiner v. Commissioner*, T.C. Memo. 1995-122, 69 T.C.M. (CCH) 2176, 2195; *see also Union Tex. Int'l Corp. v. Commissioner*, 110 T.C. 321, 327 (1988); *Century Data Sys., Inc. v. Commissioner*, 86 T.C. 157, 165 (1986). The Commissioner argues that equitable estoppel applies because he "was not in possession of all relevant facts as to whether an election

---

[9] Petitioner also argues that section 6231(g)(1) (TEFRA) is inapplicable to this case. Section 6231(g) extends the TEFRA procedures when they otherwise might not apply if the Commissioner reasonably determines from a partnership return that TEFRA applies. But section 6231(g) does not apply on the facts of this case because the Commissioner's determination to apply TEFRA was not based on the partnership return, but rather on his disregarding an election. Even if section 6231(g) might have applied, the Commissioner did not address the issue in his Response to petitioner's Motion to Dismiss; therefore, he has waived the issue.

under Treas. Reg. § 301.9100-22 would frustrate the purposes of section 1101 of the BBA, including the collection of an imputed underpayment from the partnership, and relied to [his] detriment on the misleading silence and representations made by petitioner." We disagree.

### a. *Misrepresentation or Misleading Silence*

First, the Commissioner must prove that SN Worthington made false representations or engaged in misleading silence as to whether the BBA procedures applied. SN Worthington engaged in misleading silence. In *Steiner*, 69 T.C.M. (CCH) at 2196, we found a taxpayer to have engaged in misleading silence when the taxpayer failed to correct the Commissioner about a stock conversion date. Here, SN Worthington made an election for its 2016 tax year examination and subsequent proceedings to be handled under the BBA procedures in 2018. The Commissioner subsequently denied the election. While SN Worthington continued to communicate with the Commissioner and sign documents referencing the TEFRA procedures, it did not inform the Commissioner that he had made an incorrect determination regarding the election until 2020, after the period of limitations to make adjustments for SN Worthington's 2016 tax year had expired under the BBA procedures. *See* I.R.C. § 6235(a) (BBA). This is misleading silence. Thus, we conclude that this element of equitable estoppel is present.

### b. *Originated in Mistake of Fact*

Next, the Commissioner must prove that the misleading silence originated in a statement of fact and not in a statement of law. This element can be satisfied even if the misleading silence stems from a mixed question of fact and law. *See New Cap. Fire, Inc. v. Commissioner*, T.C. Memo. 2021-67, at *46. The Commissioner argues that whether SN Worthington made a valid election into the BBA procedures is either a question of fact or a mixed question of fact and law because the requirements set forth in Treasury Regulation § 301.9100-22 are predicated on questions of fact. And because the Commissioner did not have all the relevant facts to determine whether the requirements of the Treasury regulation were satisfied, this misleading silence originated in a statement of fact.

But the Commissioner is mistaken. While we agree with the Commissioner that determining whether SN Worthington validly elected into the BBA procedures is a mixed question of fact and law, the facts necessary to ascertain whether SN Worthington made a valid

election were in the Commissioner's possession. We have found that when the relevant facts are available to both sides and the only question is how the law applies to those facts, equitable estoppel is not applicable. *See Steiner*, 69 T.C.M. (CCH) at 2196. The Commissioner had all relevant facts to determine whether a valid election had been made. He had a written statement, completed using a form he created, that satisfied all requirements of Treasury Regulation § 301.9100-22(b)(2). The Commissioner applied the law to the facts incorrectly. SN Worthington's misleading silence went to a question of law, not a statement of fact. Thus, this element of equitable estoppel is not present.

### c. *The Commissioner's Knowledge of the Facts*

Next, the Commissioner must prove that he did not have knowledge of the material facts needed to make the correct determination. As already explained, the Commissioner had all relevant facts needed to determine whether SN Worthington made a valid election into the BBA procedures. Regardless of when SN Worthington informed the Commissioner that it disagreed with the Commissioner's application of the law, the Commissioner had in his possession all of the information necessary to apply his own regulation. Thus, we conclude that this element of equitable estoppel is not present.

### 2. *Equitable Estoppel Requirements Are Not Met*

Because we have concluded that the Commissioner failed to establish two of the five elements needed to invoke the doctrine of equitable estoppel, we need not address the remaining requirements (reasonable reliance and adverse effect). The Commissioner failed to establish that all of the elements of equitable estoppel have been met. Accordingly, petitioner is not equitably estopped from arguing that the BBA procedures apply.

### III. *Conclusion*

SN Worthington made a valid election into the BBA procedures for the year in issue. The Commissioner nonetheless followed TEFRA procedures and issued an FPAA to make his adjustments. Because SN Worthington was not subject to TEFRA, the FPAA is invalid. Because the issuance of a valid notice is a jurisdictional prerequisite for this proceeding, we lack jurisdiction. Furthermore, the Commissioner did not establish that the elements of equitable estoppel have been satisfied.

To reflect the foregoing,

*An order of dismissal for lack of jurisdiction will be entered.*